JS 44C/SDNY
REV. 7/2012

# JUDGE CARTER

**CIVIL COVER SHEET**

13 CV 5972

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

AUG 2 3 2013

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Melissa Bastian | New York City Department of Education |

| ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| The Law Office of Steven A. Morelli<br>1461 Franklin Ave.<br>Garden City, N.Y. 11530 | |

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
(DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

42 U.S.C 1981, 42 U.S.C 1983

Has this or a similar case been previously filed in SDNY at any time? No [ ]  Yes [X]  Judge Previously Assigned

If yes, was this case  Vol. [ ]  Invol. [ ]  Dismissed. No [ ]  Yes [ ]  If yes, give date _____ & Case No. _____

Is this an INTERNATIONAL ARBITRATION CASE?  No [X]  Yes [ ]

*(PLACE AN [x] IN ONE BOX ONLY)*

## NATURE OF SUIT

**TORTS**

**ACTIONS UNDER STATUTES**

**CONTRACT**

- [ ] 110 INSURANCE
- [ ] 120 MARINE
- [ ] 130 MILLER ACT
- [ ] 140 NEGOTIABLE INSTRUMENT
- [ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
- [ ] 151 MEDICARE ACT
- [ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS)
- [ ] 153 RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS
- [ ] 160 STOCKHOLDERS SUITS
- [ ] 190 OTHER CONTRACT
- [ ] 195 CONTRACT PRODUCT LIABILITY
- [ ] 196 FRANCHISE

**REAL PROPERTY**

- [ ] 210 LAND CONDEMNATION
- [ ] 220 FORECLOSURE
- [ ] 230 RENT LEASE & EJECTMENT
- [ ] 240 TORTS TO LAND
- [ ] 245 TORT PRODUCT LIABILITY
- [ ] 290 ALL OTHER REAL PROPERTY

**PERSONAL INJURY**

- [ ] 310 AIRPLANE
- [ ] 315 AIRPLANE PRODUCT LIABILITY
- [ ] 320 ASSAULT, LIBEL & SLANDER
- [ ] 330 FEDERAL EMPLOYERS' LIABILITY
- [ ] 340 MARINE
- [ ] 345 MARINE PRODUCT LIABILITY
- [ ] 350 MOTOR VEHICLE
- [ ] 355 MOTOR VEHICLE PRODUCT LIABILITY
- [ ] 360 OTHER PERSONAL INJURY

**ACTIONS UNDER STATUTES**

**CIVIL RIGHTS**

- [ ] 441 VOTING
- [x] 442 EMPLOYMENT
- [ ] 443 HOUSING/ ACCOMMODATIONS
- [ ] 444 WELFARE
- [ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT
- [ ] 446 AMERICANS WITH DISABILITIES -OTHER
- [ ] 440 OTHER CIVIL RIGHTS (Non-Prisoner)

**PERSONAL INJURY**

- [ ] 362 PERSONAL INJURY - MED MALPRACTICE
- [ ] 365 PERSONAL INJURY PRODUCT LIABILITY
- [ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

**PERSONAL PROPERTY**

- [ ] 370 OTHER FRAUD
- [ ] 371 TRUTH IN LENDING
- [ ] 380 OTHER PERSONAL PROPERTY DAMAGE
- [ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY

**PRISONER PETITIONS**

- [ ] 510 MOTIONS TO VACATE SENTENCE 20 USC 2255
- [ ] 530 HABEAS CORPUS
- [ ] 535 DEATH PENALTY
- [ ] 540 MANDAMUS & OTHER

**PRISONER CIVIL RIGHTS**

- [ ] 550 CIVIL RIGHTS
- [ ] 555 PRISON CONDITION

**FORFEITURE/PENALTY**

- [ ] 610 AGRICULTURE
- [ ] 620 OTHER FOOD & DRUG
- [ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
- [ ] 630 LIQUOR LAWS
- [ ] 640 RR & TRUCK
- [ ] 650 AIRLINE REGS
- [ ] 660 OCCUPATIONAL SAFETY/HEALTH
- [ ] 690 OTHER

**LABOR**

- [ ] 710 FAIR LABOR STANDARDS ACT
- [ ] 720 LABOR/MGMT RELATIONS
- [ ] 730 LABOR/MGMT REPORTING & DISCLOSURE ACT
- [ ] 740 RAILWAY LABOR ACT
- [ ] 790 OTHER LABOR LITIGATION
- [ ] 791 EMPL RET INC SECURITY ACT

**IMMIGRATION**

- [ ] 462 NATURALIZATION APPLICATION
- [ ] 463 HABEAS CORPUS- ALIEN DETAINEE
- [ ] 465 OTHER IMMIGRATION ACTIONS

**BANKRUPTCY**

- [ ] 422 APPEAL 28 USC 158
- [ ] 423 WITHDRAWAL 28 USC 157

**PROPERTY RIGHTS**

- [ ] 820 COPYRIGHTS
- [ ] 830 PATENT
- [ ] 840 TRADEMARK

**SOCIAL SECURITY**

- [ ] 861 HIA (1395ff)
- [ ] 862 BLACK LUNG (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID TITLE XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**

- [ ] 870 TAXES (U.S. Plaintiff or Defendant)
- [ ] 871 IRS-THIRD PARTY 26 USC 7609

**OTHER STATUTES**

- [ ] 400 STATE REAPPORTIONMENT
- [ ] 410 ANTITRUST
- [ ] 430 BANKS & BANKING
- [ ] 450 COMMERCE
- [ ] 460 DEPORTATION
- [ ] 470 RACKETEER INFLU- ENCED & CORRUPT ORGANIZATION ACT (RICO)
- [ ] 480 CONSUMER CREDIT
- [ ] 490 CABLE/SATELLITE TV
- [ ] 810 SELECTIVE SERVICE
- [ ] 850 SECURITIES/ COMMODITIES/ EXCHANGE
- [ ] 875 CUSTOMER CHALLENGE 12 USC 3410
- [ ] 890 OTHER STATUTORY ACTIONS
- [ ] 891 AGRICULTURAL ACTS
- [ ] 892 ECONOMIC STABILIZATION ACT
- [ ] 893 ENVIRONMENTAL MATTERS
- [ ] 894 ENERGY ALLOCATION ACT
- [ ] 895 FREEDOM OF INFORMATION ACT
- [ ] 900 APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE
- [ ] 950 CONSTITUTIONALITY OF STATE STATUTES

*Check if demanded in complaint:*

CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.? IF SO, STATE:

DEMAND $ _____  OTHER _____  JUDGE _____  DOCKET NUMBER _____

*Check YES only if demanded in complaint*
JURY DEMAND: [X] YES [ ] NO

NOTE: Please submit at the time of filing an explanation of why cases are deemed related.

**(PLACE AN x IN ONE BOX ONLY)**    **ORIGIN**

[x] 1 Original Proceeding     [ ] 2 Removed from State Court     [ ] 3 Remanded from Appellate Court     [ ] 4 Reinstated or Reopened     [ ] 5 Transferred from (Specify District)     [ ] 6 Multidistrict Litigation     [ ] 7 Appeal to District Judge from Magistrate Judge Judgment

 a. all parties represented

 b. At least one party is pro se.

**(PLACE AN x IN ONE BOX ONLY)**    **BASIS OF JURISDICTION**

[ ] 1 U.S. PLAINTIFF     [ ] 2 U.S. DEFENDANT     [x] 3 FEDERAL QUESTION (U.S. NOT A PARTY)     [ ] 4 DIVERSITY

*IF DIVERSITY, INDICATE CITIZENSHIP BELOW. (28 USC 1332, 1441)*

CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)

(Place an [X] in one box for Plaintiff and one box for Defendant)

| | PTF | DEF | | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ] 1 | [ ] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 3 | [ ] 3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5 | [ ] 5 |
| CITIZEN OF ANOTHER STATE | [ ] 2 | [ ] 2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ] 4 | [ ] 4 | FOREIGN NATION | [ ] 6 | [ ] 6 |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

Melissa Bastian
1010 Sherman Ave
Bronx, N.Y. 10456

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

New York City Department of Education
52 Chambers St.
New York, N.Y. 10007

DEFENDANT(S) ADDRESS UNKNOWN
REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

Check one:    THIS ACTION SHOULD BE ASSIGNED TO:    [ ] WHITE PLAINS    [x] MANHATTAN
(DO NOT check either box if this a PRISONER PETITION/PRISONER CIVIL RIGHTS COMPLAINT.)

DATE 8/23/13    SIGNATURE OF ATTORNEY OF RECORD

RECEIPT #

ADMITTED TO PRACTICE IN THIS DISTRICT
[ ] NO
[x] YES (DATE ADMITTED Mo. 6 Yr. 1986)
Attorney Bar Code # SM-4721

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ GORENSTEIN is so designated.

Ruby J. Krajick, Clerk of Court by _____ Deputy Clerk, DATED _____

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of New York ▾

JUDGE CARTER

Melissa Bastian
)
)
)
)
_____
)
*Plaintiff(s)*
)
v.
)
New York City Department of Education
)
)
)
_____
)
*Defendant(s)*
)

Civil Action No.

# 13 CV 5972

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  New York City Department of Education
52 Chambers St.
New York, N.Y. 10007

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: The Law Office of Steven A. Morelli
1461 Franklin Ave
Garden City, N.Y. 11530

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

RUBY J. KRAJICK
CLERK OF COURT

AUG 2 3 2013

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

JUDGE CARTER                    13 CV 5972

Steven A. Morelli (SM-4721)
Joshua Beldner (JB-2182)
The Law Office of Steven A. Morelli, P.C.
1461 Franklin Avenue
Garden City, NY 11530
(516) 393-9151

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MELISSA BASTIAN,

                         Plaintiff,

     - against -

NEW YORK CITY DEPARTMENT
OF EDUCATION,

                         Defendant.
-----------------------------------------------------------X



VERIFIED
COMPLAINT

*Jury Trial Demanded*

Plaintiff MELISSA BASTIAN, by and through her attorneys, The Law Office of

Steven A. Morelli, P.C., respectfully alleges, upon knowledge as to herself and her own

actions and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

1.     Plaintiff Melissa Bastian, a well-respected African American school secretary

with nearly 29 years of experience, has been subjected to a coordinated effort on

the part of the Hispanic administrators and principal to drive African-American

employees like her from the A. Phillip Randolph High School in recent years.

1

2.    Specifically, Plaintiff has been subjected to continuous and ongoing discriminatory treatment on the basis of her race. In particular, Ms. Bastian was: (1) reassigned to an inferior position; (2) denied several promotional opportunities, despite being overly qualified for the positions; and (3) subjected to several blatant racist remarks by her Hispanic supervisors. As more fully set forth below, in discriminating against Plaintiff on the basis of her race, and in subjecting her to a hostile work environment, Defendant violated 42 U.S.C. § 1981, and the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, pursuant to 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

3.    This Court has original jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. §§ 1331 & 1343.

4.    Venue is proper in this case pursuant to 28 U.S.C. § 1391.

## PARTIES

5.    Plaintiff MELISSA BASTIAN is a 50-year-old African-American female, who is a resident and domiciliary of Bronx County, New York. At all times relevant to this complaint, Plaintiff was an employee of the New York City Department of Education.

6.    Defendant NEW YORK CITY DEPARTMENT OF EDUCATION is a municipal corporation incorporated under the laws of the State of New York, which is in charge of all public schools in the City of New York, including terms and conditions of employment for all teachers, principals, superintendents, clerks, and other employees of the Department of Education. Its headquarters is located at 52 Chambers Street, New York, New York 10007. At all times relevant to this complaint, Defendant was Plaintiff's "employer."

## FACTUAL ALLEGATIONS

7.    Plaintiff Melissa Bastian was originally hired by Defendant Department of Education in 1984. Specifically, Plaintiff was hired to work as the Principal's secretary at A. Philip Randolph High School.

8.    In 1985, Ms. Bastian left the position and began working at the Outreach Alternative High School in 1986. From 1986 to 1995, Ms. Bastian worked at Outreach Alternative as the school's sole secretary. In 1995, she returned to A. Philip Randolph High School, and has worked continuously at the school through the present date.

9.    Ms. Bastian holds a secretarial license, which is a requirement for the position of school secretary.

10.   Over the course of her employment with Defendant, Plaintiff has proven herself
      as a hard-working, dependable, and professional employee. Indeed, throughout
      her tenure at Defendant, Ms. Bastian has received exclusively positive
      performance reviews and the highest possible marks on all evaluations.

11.   At A. Philip Randolph High School, there exists a cultural segregation between
      the Hispanic staff, which includes the majority of administrators, and the African-
      American staff. This has manifested itself in a decline in the number of African-
      American employees in the school over recent years, and in the discriminatory
      treatment meted out by the Hispanic administrators to the African-American staff.

12.   In or about 2005, Mr. Henry Rubio, a Hispanic male, became the Principal of
      the High School. In his position, he was responsible for the hiring of
      administrators in the High School. Under Mr. Rubio's "leadership," the great
      majority of administrators hired were Hispanic. Notably, only one of the
      administrators hired by Rubio was African American.

13.   In particular, under Rubio's tenure as Principal, the following individuals were
      hired for administrative positions: (1) Gilberto Garcia, a Hispanic male, was
      hired for the position of Assistance Principal of Security and Foreign Languages;
      (2) Eduardo Casarces, a Hispanic male, was hired for the position of Assistant
      Principal of the Humanities Academy; (3) Daniel Calcano, a Hispanic male, was
      hired for the position of Interim Assistant Principal of Guidance and Physical

Education; and (4) Milciades "Mayo" Pepin, a Hispanic male, was hired for the position of Assistant Principal of Technology.

14. Moreover, shortly after Mr. Rubio became Principal, Ms. Bastian became aware that Mr. Rubio actually brought in several "Community Associates" and "Community Assistants" to work at the High School. Notably, all of the aforementioned individuals brought in to work at the school were Hispanic.

15. Many of the aforementioned Community Associates and Assistants were tasked with secretarial responsibilities that they were not licensed to perform. In addition, the Community Associates and Assistants were given air conditioned offices with windows, upgraded equipment, including state-of-the-art copy machines and computers, and new desks. They were also invited to school-sponsored parties thrown by Mr. Rubio. Ms. Bastian was never invited to any such parties thrown by Mr. Rubio.

16. In 2008, following the influx of Rubio's Hispanic Community Associates, Ms. Bastian was transferred to Pupil Personnel/Records, wherein she had to travel to several of the Assistant Principal's offices and perform various tasks that were presented to her. Much of the work that she was asked to perform was non-secretarial in nature. In her new position, Plaintiff's office was taken away from her. As such, Ms. Bastian no longer had any office space. Notably, Ms. Bastian was not given any justification for her transfer.

5

17.   Several people held a position in Pupil Personnel/Records at the same time that Ms. Bastian was transferred into that department. However, none of them had their secretarial licenses or the seniority that Ms. Bastian held in the High School.

18.   On several occasions, the individuals holding the "Community Associate" position, all of whom were Hispanic, were given the opportunity to attend training classes in order to strengthen their skills. However, Mr. Rubio refused to allow Ms. Bastian to attend any training classes despite her requests to do so.

19.   In 2008, after vocalizing her dissatisfaction with the administration's appointment of an individual to perform secretarial work for which she was not licensed to perform, Ms. Bastian was assigned to the records room wherein she was responsible for maintaining current and archived school records. At this time, she was still expected to work for the Assistant Principals as well.

20.   The records room is small, windowless and does not have any ventilation or air conditioning. In fact, it is the *only* office in the High School that is windowless, not ventilated and lacking air conditioning. Ms. Bastian was often asked by students, other staff members, and visiting parents how she could work in such deplorable conditions. At the time when Ms. Bastian was forced to work in the records room, there were three vacant offices in the guidance suite. Although Plaintiff made requests to be relocated to one of the offices in the guidance suite, her requests were always denied.

21.     In May 2009, Ms. Bastian graduated from the Alfred University School Counseling Program and received a Master's degree in School Counseling.

22.     In or about July 2009, Ms. Bastian met with Mr. Rubio, and provided her cover letter, resume and license, and inquired as to whether there were any available school counselor positions. Mr. Rubio stated that there was a hiring freeze for monolingual placements, and that he could only hire applicants who were bilingual. However, Mr. Rubio assured Ms. Bastian that he would keep her documents and consider her for a position when the freeze was lifted, and positions became available.

23.     In late 2009, Defendant's harassment and discrimination escalated from non-verbal actions against Ms. Bastian, as described above, to verbalized harassment and discrimination by the High School's administrators.

24.     Specifically, on September 10, 2009, Ms. Bastian was in the main office when Gilberto Garcia, the Assistant Principal of Security and Foreign Language, walked into the office, picked up a radio and requested the whereabouts of Darius Waters, an African American school support staff member. Mr. Waters responded to the transmission by stating that he was in the restroom.

25.     After hearing the reply, Mr. Garcia stated loudly, "don't those people know that they are lactose intolerant?" Mr. Garcia then looked directly at Ms. Bastian and

said "right, Ms. Bastian, right?" In response, Ms. Bastian asked "what people are you referring to?" Mr. Garcia did not respond and simply walked away. Ms. Bastian was deeply offended by Mr. Garcia's stereotypical remarks suggesting that all African Americans are lactose intolerant.

26.   A short time later, Ms. Bastian met with her immediate supervisor, Mr. Menegatos, to report Mr. Garcia's disturbing and inflammatory remarks. In response, Mr. Menegatos sent her an email on September 10, 2009 wherein he acknowledged their conversation and referred her to the Chancellor's Regulation A-830 (the Public Notification of Non-Discriminatory Policy). No other action was taken by the administration.

27.   On several occasions, Mr. Menegatos teased Ms. Bastian by pretending to type on his computer while stating that he was trying to give Ms. Bastian a position as a school counselor. He would then jokingly conclude that his computer would not allow him to do so. Ms. Bastian was tormented by his numerous tasteless jokes.

28.   In June 2010 and June 2011, Ms. Bastian received her performance evaluations wherein she continued to obtain "Satisfactory" reviews of her work. In addition, her 2011 evaluation contained a hand written note which thanked Ms. Bastian for "supporting [their] assistant principals, college advisor, all students and [the] guidance suite."

29.  On or about December 6, 2011, David Fanning became the new Principal of the High School, replacing Mr. Rubio.

30.  Shortly after Mr. Fanning's appointment, he was given the opportunity to view Ms. Bastian's "office." Mr. Fanning was appalled by the poor conditions in which Ms. Bastian had been forced to work and decided to move her into one of the vacant offices in the guidance suite. Ms. Bastian's new office was adjacent to the office of Mr. Garcia.

31.  However, although Ms. Bastian's physical working conditions improved, the discrimination and harassment that she suffered continued in her new office environment. On one occasion, Mr. Garcia blasted his radio at the wall which separates his office from Ms. Bastian's office. He then went into Ms. Bastian's office and said that he hoped that she would not mind the loud music. In response, Ms. Bastian asked him why he thought that she would mind it. Mr. Garcia then stated that he thought she would not enjoy it because the music was classical, thereby stereotyping Ms. Bastian as an African American woman who could not appreciate classical music.

32.  On December 7, 2011, Ms. Bastian was the target of yet another blatantly racist comment by Mr. Garcia. Specifically, on that day, Ms. Bastian was tasked with the responsibility of retrieving documents from Mr. Garcia's office. When she arrived at his office, she noticed that Mr. Garcia and Ms. Manrique were eating breakfast

together. Ms. Conquest, another teacher, entered Mr. Garcia's office at the same time as Ms. Bastian. Mr. Garcia then stood up and offered Ms. Conquest some of his breakfast. He subsequently turned to Ms. Bastian and stated "I don't have any grits," thereby insinuating that Ms. Bastian must eat grits because she is African American. Ms. Bastian was deeply embarrassed and humiliated by Mr. Garcia's constant barrage of derogatory racial comments towards her.

33.   That day, Plaintiff contacted Mr. Menegatos and reported Mr. Garcia's derogatory remark. Ms. Bastian documented her account of the incident, and provided it to Mr. Menegatos. Her statement was forwarded to Principal Fanning. Thereafter, Mr. Menegatos simply sent Plaintiff another copy of the Chancellor's Regulation A-830. Upon information and belief, Defendant took no other action to address Ms. Bastian's complaint.

34.   On or about March 16, 2012, Plaintiff received a letter from Mr. Fanning, wherein he thanked her for volunteering her time to participate in the Renew Randolph event; an event held on a Saturday to reorganize the High School's files.

35.   Mr. Fanning praised Plaintiff for her "continued dedication to the students and staff of A. Philip Randolph Campus High School."

36.   Thus, despite the constant discrimination and harassment that Ms. Bastian continued to endure, she nonetheless excelled in her position and, moreover, even volunteered her time on the weekend to help the High School.

37.   In April 2012, Ms. Bastian was informed of the hiring of several positions in the guidance department over the prior years.

38.   Specifically, she learned that counselor positions were awarded to Ms. Altagracia Ramirez, a Hispanic woman, and Mr. Ezequiel Perez, a Hispanic male. In particular, Ms. Ramirez was hired as a school counselor on September 7, 2010. Prior to her hiring, Ms. Ramirez had no prior Department of Education experience. Mr. Perez was hired on March 21, 2011. Prior to his appointment, Mr. Perez had worked as a parent coordinator.

39.   Notably, both of the aforementioned Hispanic individuals were hired during Mr. Rubio's tenure as Principal.

40.   Plaintiff also learned that Ms. Lauren Porzelt, a Caucasian woman with no prior Department of Education experience, was hired on October 2, 2010, as a college advisor, and that Ms. Ingrid Paulino, a Hispanic woman, was hired for a school counselor position as well.

41.  Ms. Bastian was undoubtedly more qualified than any of the aforementioned individuals. Not only did Plaintiff hold a Master's Degree, but she had more experience at the Department of Education, and more seniority at the school.

42.  Notably, although the Department of Education requires that all job postings be displayed prominently, there were no postings of the aforementioned jobs in the High School. Ms. Bastian asked Mr. Fanning to confirm that the High School did not display any job postings for the newly-filled positions. Mr. Fanning verbally confirmed to Ms. Bastian that, in fact, no postings were in the file from previous administration.

43.  Further, all vacant positions in a school are required to be listed on the "Open Market" system; a database that is only accessible to employees of the Department of Education. The purpose of the Open Market system is to give Department of Education employees an opportunity to apply for vacant positions before they are advertised to the general public.

44.  None of the aforementioned counselor positions were listed in the Open Market system. Not surprisingly, none of the newly-appointed guidance department employees were previously employed by the Department of Education.

45.  Significantly, despite Mr. Rubio's assertions that he could not hire school counselors with monolingual licenses due to the hiring freeze, Ms. Ramirez, Ms.

Porzelt and Ms. Perez were all listed in the High School's computer database as having monolingual licenses. Ms. Paulino's license designation is unknown.

46.   Thus, Plaintiff was not only denied the opportunity to interview for the positions, but she was not even notified that the positions were available, despite her superior qualifications.

47.   Clearly, Mr. Rubio was not being truthful in his statements to Plaintiff regarding the counselor positions.

48.   On or about June 17, 2013, Ms. Bastian saw an open position for guidance counselor at the High School on Open Market. Upon seeing the position, Plaintiff advised Ms. Burke of the same. Ms. Burke saw the job posting, and witnessed Ms. Bastian apply for the position.

49.   At approximately 3:00pm on the same day, Ms. Bastian advised Mr. Fanning that she saw the job listing and applied for the position. In response, Mr. Fanning indicated that Ms. Ramirez, a guidance counselor on maternity leave, was going to be returning to the High School from her leave, and in order for her to do so, he was required to post the job listing specifically for her. As such, Fanning told Plaintiff that the job posting was not intended for any applicants other than Ms. Ramirez.

50.    Upon information and belief, Defendant is not required to post a job listing on Open Market in order to permit an employee returning from maternity leave to reassume the position.

51.    The same day, Ms. Bastian contacted Ms. Nicole McShall, the union representative, to ask her about the guidance counselor job opening at the High School.

52.    Ms. McShall stated that she was not notified of the open position, despite Defendant's obligation to advise her of all available positions. Additionally, Ms. McShall told Ms. Bastian that she had never been advised that Defendant was required to post a position on Open Market in order to allow an employee to return from maternity.

53.    On June 18, 2013, the job posting for the guidance counselor position at the High School was removed from Open Market. Further, that day, Plaintiff logged on to Open Market and viewed her history of job applications. Although the history showed Plaintiff's applications to other positions that had been posted and filled, Ms. Bastian's most recent application to the guidance counselor position at the High School was missing.

54.    Thus, one day after Ms. Bastian saw the available position, submitted an application, and informed Mr. Fanning of the same, the position was removed

from Open Market, and Plaintiff's application was suspiciously erased from the application log section of her password-protected account.

## CLAIMS FOR RELIEF

55.  Based on the foregoing, in discriminating against Plaintiff in the terms conditions, and privileges of employment, and in subjecting Plaintiff to a hostile work environment on the basis of her African American race, Defendant violated 42 U.S.C. § 1981.

56.  Based on the foregoing, in discriminating against Plaintiff in the terms conditions, and privileges of employment, and in subjecting Plaintiff to a hostile work environment based on her African American race, Defendant violated the Fourteenth Amendment to the U.S. Constitution, pursuant 42 U.S.C. § 1983. The New York City Department of Education intentionally committed, condoned or was deliberately indifferent to the aforementioned violations of Plaintiff's constitutional rights.   Such deliberate indifference may be inferred in the following ways:

   i.   Defendant's custom or practice of discriminating against Plaintiff based on his race and gender. The discriminatory practices were so persistent and widespread that they constitute the constructive acquiescence of policymakers.

ii.   Inadequate training/supervision was so likely to result in the discrimination that policymakers can reasonably be said to have been deliberately indifferent to the need to provide better training and supervision.

iii.  Supervisors failed to properly investigate and address allegations of discrimination.

iv.   Policymakers engaged in and/or tacitly condoned the discrimination.

**WHEREFORE**, Plaintiff demands judgment against Defendant for all compensatory, emotional, physical, and punitive damages (where applicable), front pay, back pay, liquidated damages, injunctive relief, and any other damages permitted by law. It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled.

**Further,** Plaintiff demands a trial by jury.

Dated: Garden City, New York
        July 15, 2013

Steven A. Morelli
THE LAW OFFICE OF
STEVEN A. MORELLI, P.C.
1461 Franklin Avenue
Garden City, New York 11530
(516) 393-9151
F: (516) 280-7528