UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------------- x

MELISSA BASTIAN,

          Plaintiff,

     -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

         Defendant.

------------------------------------------------------------------------------- x

**DEFENDANT'S LOCAL CIVIL RULE 56.1 STATEMENT OF UNDISPUTED FACTS**

13 Civ. 5972 (ALC)(GWG)

Defendant New York City Department of Education ("DOE")[1] respectfully asserts that, for the purposes of this motion only, the following facts are undisputed and support the grant of summary judgment in favor of defendant:

**Background**

1. The DOE's policy in regard to equal employment opportunity, including opposition to workplace discrimination, is set by the Chancellor of the DOE and is contained in DOE Chancellor's Regulation A-830. See Ex. G (DOE Chancellor's Reg. A-830).[2]

2. Chancellor's Regulation A-830 sets forth the procedures for employees, parents of students, students and others who interact with the DOE to file complaints of unlawful discrimination or retaliation based upon such complaints. See Ex. G (DOE Chancellor's Reg. A-830).

3. Under Chancellor's Regulation A-830, complaints of discriminatory treatment are to be made to the DOE Office of Equal Opportunity and Diversity Management

---

[1] Formally, the Board of Education of the City School District of the City of New York.

[2] Unless otherwise noted, all exhibits referenced are annexed to the Declaration of Sean R. Renaghan in Support of Defendant's Motion for Summary Judgment, dated February 27, 2015 ("Renaghan Decl.").

("OEO"), which is empowered to investigate and take remedial action in response to such complaints.  <u>See</u> Ex. G (DOE Chancellor's Reg. A-830).

4.      A. Philip Randolph High School ("A.P. Randolph") is a DOE High School located in the West Harlem area of Manhattan.  <u>See</u> Ex. F (Sullivan Decl.) at ¶ 4.

5.      As of February 20, 2015, the self-reported ethnicity of the student population at A.P. Randolph is approximately: 60% Hispanic, 32% Black, 5% Asian, 2% White, <1% Native American, Native Hawaiian or Pacific Islander, or Multi-Racial, and 1% unreported. <u>See</u> Ex. F (Sullivan Decl.) at ¶ 5.

6.      Plaintiff identifies herself as African American.  <u>See</u> Ex. A (Compl.) ¶ 5

**<u>Plaintiff's Early Career With the DOE</u>**

7.      In 1984, plaintiff was hired by the DOE to work as a secretary at A.P. Randolph.  <u>See</u> Ex. A (Compl.) ¶ 7.

8.      Plaintiff left A.P. Randolph in 1985. <u>See</u> Ex. A (Compl.) ¶ 8; Ex. B (Pl. Dep.) at 17:6-18.

9.      In September 1987, plaintiff began working again for the DOE as a secretary at an alternative school.  <u>See</u> Ex. A (Compl.) ¶ 8; Ex. B (Pl. Dep.) at 17:17-24.

**<u>Plaintiff's Return to A.P. Randolph High School</u>**

10.      In 1995, Plaintiff returned to work at A.P. Randolph as a school secretary, and was assigned to work with the school's guidance office.  <u>See</u> Ex. A (Compl.) ¶ 8; Ex. B (Pl. Dep.) at 17:14-15, 17:24-25, 20:5-7; Ex. H (Pl. Resume).

11.      In September 2003, plaintiff was assigned to work as a secretary in the college office at A.P. Randolph.  <u>See</u> Ex. B (Pl. Dep.) at 20:7-13; Ex. H (Pl. Resume).

12.     From approximately August 2004 until on or about November 2006, the principal of A.P. Randolph was Maurice Collins ("Principal Collins").  <u>See</u> Ex. F (Sullivan Decl.) at ¶ 6.

13.     Plaintiff testified that no one discriminated against her at A.P. Randolph under Principal Collins, and that she loved the school at the time.  <u>See</u> Ex. B (Pl. Dep.) at 64:8 – 65:4, 197:12-16.

**<u>A.P. Randolph High School Under Principal Rubio and Principal Fanning</u>**

14.     In November 2006, Henry Rubio ("Principal Rubio") became the principal of A.P. Randolph.  <u>See</u> Ex. E (Rubio Dep.) at 10:25 – 11:3.

15.     Principal Rubio self-identifies as a Dominican American.  <u>See</u> Ex. E (Rubio Dep.) at 22:9-11.

16.     During Principal Rubio's tenure at A.P. Randolph, plaintiff was directly supervised by Assistant Principal for Organization Gerasimos Menegatos ("Assistant Principal Menegatos").  <u>See</u> Ex. B (Pl. Dep.) at 25:9-10, 26:7-8.

17.     Plaintiff testified that Assistant Principal Menegatos is of Greek national origin.  <u>See</u> Ex. B (Pl. Dep.) at 26:5-6.

18.     In August 2008, Gilberto Garcia ("Assistant Principal Garcia") was hired under Principal Rubio to be the Assistant Principal of Security and Foreign Language at A.P. Randolph.  <u>See</u> Ex. D (Garcia Dep.) at 12:13 – 14:4.

19.     Assistant Principal Garcia testified that he identifies himself as both Dominican American and "black."  <u>See</u> Ex. D (Garcia Dep.) at 34:4-25.

20.     In December 2011, Principal Rubio left A.P. Randolph to work at the Counsel for School Administrators.  <u>See</u> Ex. E (Rubio Dep.) at 8:16-21, 11:8-23.

21.     On December 6, 2011, David Fanning became the principal of A.P. Randolph.  See Ex. A (Compl.) ¶ 29; Ex. C (Fanning Dep.) at 7:11 – 8:9.

22.     Plaintiff has repeatedly admitted that Principal Fanning has not discriminated against her or supported a hostile work environment at A.P. Randolph.  See Ex. B (Pl. Dep.) at 65:15 – 66:3, 196:13 – 197:16, 230:12 – 231:6.

**Plaintiff's Annual Evaluations as a School Secretary Under Principal Rubio**

23.     In June 2007, Principal Rubio gave plaintiff a satisfactory annual evaluation as a school secretary for the 2006-2007 school year.  In the comments section of this evaluation, Principal Rubio wrote:

> Thank you for all your dedication & support in the College Office.  We hope to provide you with opportunities to learn payroll & purchasing for your professional growth.

See Ex. I (2007-2011 APPR).

24.     In June 2008, Principal Rubio gave plaintiff a satisfactory annual evaluation as a school secretary for the 2007-2008 school year.  In the comments section of this evaluation, Principal Rubio wrote:

> Thank you for your service.  I look forward to your continued support with our assistant principals. Have a wonderful summer.

See Ex. I (2007-2011 APPR).

25.     In June 2009, Principal Rubio gave plaintiff a satisfactory annual evaluation as a school secretary for the 2008-2009 school year.  See Ex. I (2007-2011 APPR).

26.     In June 2010, Principal Rubio gave plaintiff a satisfactory annual evaluation as a school secretary for the 2009-2010 school year.  See Ex. A (Compl.) ¶ 28; Ex. I (2007-2011 APPR).

27.     In June 2011, Principal Rubio gave plaintiff a satisfactory annual evaluation as a school secretary for the 2010-2011 school year.  In the comments section of this evaluation, Principal Rubio wrote:

> Melissa, Thank you for supporting our Assistant Principals, college adviser, All students, & guidance suite… Have a wonderful summer!!!

See Ex. I (2007-2011 APPR); Ex. A (Compl.) ¶ 28.

**The School Assists Plaintiff in Obtaining a Degree in Counseling and Tries to Help Her Develop Skills in this Area**

28.     In the summer of 2007, plaintiff began working toward a Master of Science in Education degree, majoring in Counseling, with the Alfred University Center for Integrated Teacher Education program.  See Ex. B (Pl. Dep.) at 11:17 – 12:20.

29.     In September 2008, Assistant Principal Menegatos agreed to supervise plaintiff as a School Counselor Intern at A.P. Randolph as part of plaintiff's course work for her Master's in Education degree.  See Ex. L (Sept. 2008 Supervisor Form); Ex. B (Pl. Dep.) at 35:20 – 36:8.

30.     In May 2009 plaintiff received a Master's of Science in Education degree, with a major in counseling, from Alfred University School.  See Ex. A (Compl.) ¶ 21; Ex. B (Pl. Dep.) at 11:17 – 12:20.

31.     Assistant Principal Menegatos wrote plaintiff a letter of recommendation in support of her search for a guidance counselor position.  See Ex. G (Menegatos Recommend.).

32.     In February 2010, in response to e-mails where plaintiff expressed interest in doing some work with students under Assistant Principal Garcia, Principal Rubio encouraged plaintiff, stating:

Melissa-Considering you now have a counseling license, is this something you want to do under Mr. Garcia's supervision and direction?

<u>See</u> Ex. X (Feb. 5, 2010 E-mail).

**<u>The Allegedly Wrongful Non-Selection of Plaintiff for a Guidance Counselor Position</u>**

33. In August 2008, Kanika Hugh was hired under Principal Rubio to work as a guidance counselor at A.P. Randolph in the title of Guidance Counselor Secondary. <u>See</u> Ex. F (Sullivan Decl.) at ¶ 8.

34. Ms. Hugh self-identifies her ethnicity as Black. <u>See</u> Ex. F (Sullivan Decl.) at ¶ 9.

35. In July 2009, plaintiff allegedly met with Rubio, at which time plaintiff allegedly provided Rubio with her cover letter and resume, and asked if there were any available guidance counselor positions at A.P. Randolph. Rubio purportedly told Plaintiff that there was a hiring freeze on monolingual guidance counselors and that he could only hire applicants who were bilingual. <u>See</u> Ex. A (Compl.) ¶ 22; Ex. B (Pl. Dep.) at 221:17 – 222:8.

36. Plaintiff admits that she does not have a bilingual license or certification. <u>See</u> Ex. B (Pl. Dep.) at 33:20-25.

37. In September 2009, Sonia Burke was hired under Principal Rubio to work as a guidance counselor at A.P. Randolph in the title of Bilingual Guidance Counselor Spanish Secondary. <u>See</u> Ex. F (Sullivan Decl.) at ¶ 10.

38. Plaintiff described Ms. Burke as African American. <u>See</u> Ps Dep. 158:2-3.

39. DOE records show that Ms. Burke self-identifies as black. <u>See</u> Ex. F (Sullivan Decl.) at ¶ 11.

40.     In addition to possessing a School Counselor certification from New York State, Ms. Burke also possessed a Bilingual Education Extension from the State at that time of her appointment to the guidance counselor position.  See Ex. F (Sullivan Decl.) at ¶ 12.

41.     Plaintiff acknowledged that Ms. Burke is bilingual.  See Ex. B (Pl. Dep.) at 48:19-22, 225:18-20.

42.     In September 2010, Altagracia Ramirez was hired under Principal Rubio to work as a guidance counselor at A.P. Randolph in the title of Guidance Counselor Secondary. See Compl. ¶ 38; Ex. N (Ramirez Info.); Ex. F (Sullivan Decl.) at ¶ 13.

43.     In addition to possessing a School Counselor certification from New York State, Ms. Ramirez also possessed a Bilingual Education Extension from the State at that time. See Ex. N (Ramirez Info.)

44.     Ms. Ramirez self-identifies her ethnicity as Hispanic.  See Ex. F (Sullivan Decl.) at ¶ 14.

45.     Plaintiff acknowledges that she did nothing to seek a guidance counselor position at A.P. Randolph between July 2009 and when Ramirez was hired in the fall of 2010. See Ex. B (Pl. Dep.) at 41:14-17.

46.     In October 2010, Lauren Casey[3] was hired under Principal Rubio to work as a guidance counselor at A.P. Randolph in the title of Guidance Counselor Secondary. See Ex. A (Compl.) ¶ 40; Ex. O (Casey Info.); Ex. F (Sullivan Decl.) at ¶ 15.

---

[3] Upon information and belief, Lauren Casey is the married name of Lauren Porzelt.  See Ex. O (Casey Info.).  In deposition testimony, Ms. Casey is generally referred to as Lauren Porzelt.  See e.g., Ex. B (Pl. Dep.) at 47:18 – 49:13.

47. In addition to possessing a School Counselor certification from New York State, Ms. Casey also possessed a Bilingual Education Extension from the State at that time. See Ex. O (Casey Info.).

48. Plaintiff acknowledges that Ms. Casey worked as a counselor at another high school before A.P. Randolph. See Ex. B (Pl. Dep.) at 47:18 – 49:13.

49. Ms. Casey self-identifies her ethnicity as White. See Ex. F (Sullivan Decl.) at ¶ 16.

50. Plaintiff acknowledges that, between when Ms. Ramirez was hired and when Ms. Casey was hired, she did not do anything to seek a guidance position at A.P. Randolph. See Ex. B (Pl. Dep.) at 66:13 – 67:2.

51. In March 2011, Ezequiel Perez was hired under Principal Rubio to work as a guidance counselor at A.P. Randolph in the title of Guidance Counselor Secondary. See Ex. A (Compl.) ¶ 38; Ex. Q (Perez Info.); Ex. F (Sullivan Decl.) at ¶ 17.

52. In addition to possessing a School Counselor certification from New York State, Mr. Perez also possessed a Bilingual Education Extension from the State at that time. See Ex. Q (Perez Info.).

53. Mr. Perez self-identifies his ethnicity as Hispanic. See Ex. F (Sullivan Decl.) at ¶ 18.

54. Plaintiff alleges that she approached Assistant Principal Menegatos about guidance positions between the hiring of Ms. Casey and Mr. Perez, and that Assistant Principal Menegatos told her to ask Principal Rubio. Plaintiff acknowledges that she did not approach Mr. Rubio about guidance positions during this time frame. See Ex. B (Pl. Dep.) at 71:18-24.

55. In April 2011, Ingrid Paulino was hired under Principal Rubio to work as a guidance counselor at A.P. Randolph in the title of Bilingual Guidance Counselor Spanish Secondary. See Ex. A (Compl.) ¶ 40; Ex. R (Paulino Info.); Ex. F (Sullivan Decl.) at ¶ 19.

56. In addition to possessing a School Counselor certification from New York State, Ms. Paulino also possessed a Bilingual Education Extension from the State at that time. See Ex. R (Paulino Info.).

57. Ms. Paulino self-identifies her ethnicity as White. See Ex. F (Sullivan Decl.) at ¶ 20.

58. Plaintiff acknowledges that, between the hiring of Mr. Perez and Ms. Paulino, she did not speak to anyone at A.P. Randolph about seeking a guidance position. See Ex. B (Pl. Dep.) at 81:6-11.

59. The four hirings that plaintiff challenges as discriminatory took place from September 2010 to April 2011, and involved Altagracia Ramirez, Lauren Casey, Ezequiel Perez, and Ingrid Paulino. See Ex. A (Compl.) ¶¶ 38, 40.

60. While plaintiff alleges that the guidance positions that were filled by Ms. Ramirez, Ms. Casey, Mr. Perez, and Ms. Paulino were never posted for application, she acknowledges that she may have missed the postings. See Ex. B (Pl. Dep.) at 227:24 – 228:14.

61. Plaintiff admitted during her deposition that she did not know much about the qualifications of Ms. Ramirez, Ms. Casey, Mr. Perez, and Ms. Paulino, other than what she believed to be their most recent employment. See Ex. B (Pl. Dep.) at 29:2-19, 37:21 – 38:12, 47:18-23, 68:2-11.

62.     Plaintiff's Complaint does not acknowledge that two persons in her protected class – Kanika Hugh and Sonia Burke – were also hired under Principal Rubio for guidance counselor positions in August 2008 and September 2009.  <u>See</u> Ex. A (Compl.) <u>passim</u>.

## Other Alleged Acts of Workplace Discrimination:    Job Assignments; Workplace Conditions; and Training

63.     In 2008, Assistant Principal Menegatos reassigned plaintiff to work directly with multiple Assistant Principals at A.P. Randolph.  <u>See</u> Ex. B (Pl. Dep.) at 104:23 – 108:10.

64.     As part of this assignment, plaintiff did not have her own office, but instead worked out of the offices of the Assistant Principals for whom she was working at any given time.  <u>See</u> Ex. B (Pl. Dep.) at 104:23 – 108:10.

65.     Plaintiff contends that, during the course of this assignment, she was asked to do tasks she believed to be menial, including: photocopying, shredding, scanning books, accounting for book receipts, delivering correspondence and other items within the school, and "picking up [her] own supplies."  <u>See</u> Ex. B (Pl. Dep.) at 191:3 – 192:9.

66.     In March 2008, plaintiff filed a grievance with Principal Rubio challenging this re-assignment and the tasks she had been asked to perform with that reassignment.  <u>See</u> Ex. J (2008 Assignment Grievance).

67.     In her grievance, plaintiff did not allege that she was given this assignment because of her race, and plaintiff instead claimed that "this was done arbitrarily."  <u>See</u> Ex. J (2008 Assignment Grievance).

68.     On March 25, 2008, Principal Rubio denied plaintiff's grievance because he was not presented with any evidence of a violation of plaintiff's union contract.  There is no record of plaintiff appealing this decision.  <u>See</u> Ex. J (2008 Assignment Grievance).

69.     In the Fall of 2008, Assistant Principal Menegatos assigned plaintiff to act as the Pupil Accounting Secretary / Records Secretary at A.P. Randolph and assigned plaintiff to work out of the Records Room / Pupil Accounting Secretary's Office.  Plaintiff refers to this office as the "records room."  See Ex. A (Compl.) ¶ 19; Ex. B (Pl. Dep.) at 20:13-20, 103:7 – 104:2, 209:2-21.

70.     Plaintiff alleges that the "records room" was not a suitable place to work because it was an interior office without any windows or an air conditioning unit, and allegedly did not have any ventilation.  See Ex. A (Compl.) ¶ 20.

71.     A.P. Randolph does not have central air conditioning, and at the time Principal Rubio joined A.P. Randolph, approximately only one office area had air conditioning.  See Ex. E (Rubio Dep.) at 59:12-19.

72.     Plaintiff acknowledges that her responsibilities during the time she was assigned to the "records room," included maintaining current and archived student records.  See Ex. A (Compl.) ¶ 19; Ex. B (Pl. Dep.) at 103:23 – 104:2.

73.     Plaintiff also acknowledges that her assignment to work out of the "records room" was a "split position" where plaintiff would only "work some hours" in the records room and would spend the rest of her time continuing to work directly with the Assistant Principals.  See Ex. A (Compl.) ¶ 19; Ex. B (Pl. Dep.) at 103:7 – 104:2, 209:2-21.

74.     In fact, the work schedules submitted by plaintiff show that plaintiff was only assigned to work out of the records room for between one and three periods of the eight to nine period school day.  See Ex. K (Pl. Work Schedules).

75.     Shortly after December 2011, plaintiff was moved to an office in the guidance suite at A.P. Randolph.  See Ex. A (Compl.) ¶ 30.

76.     This office was next to the office of Assistant Principal Garcia.  <u>See</u> Ex. B (Pl. Dep.) at 135:3-8.

77.     Plaintiff contends that, during the 2008-2009 and 2009-2010 school years, her requests to attend trainings on some computer programs, such as Microsoft Word or Microsoft Excel were denied.  <u>See</u> Ex. A (Compl.) ¶18; Ex. B (Pl. Dep.) at 97:9 – 101:8.

78.     Plaintiff claims that this denial was discriminatory based on her race because employees in the separate job function and title of Community Associate or Community Assistant, who were allegedly mostly of Hispanic descent, were purportedly allowed to attend these trainings.  <u>See</u> Ex. B (Pl. Dep.) at 101:11 – 102:25.

79.     While plaintiff states in her complaint that Principal Rubio denied her requests to attend these trainings, her testimony in her deposition makes clear that, to the extent anyone denied plaintiff's requests to attend trainings, it was Assistant Principal Menegatos. <u>Compare</u> Ex. A (Compl.) ¶ 18, <u>with</u> Ex. B (Pl. Dep.) at 97:9 – 101:8.

80.     Plaintiff acknowledges that, in 2008, Assistant Principal Menegatos sent plaintiff for some trainings, such as training on a particular system.  <u>See</u> Ex. B (Pl. Dep.) at 97:16-20.

81.     Plaintiff acknowledges that when her requests to attend training were denied, Assistant Principal Menegatos advised plaintiff that she was needed at the school. <u>See</u> Ex. B (Pl. Dep.) at 99:1-4, 101:2-8.

82.     Plaintiff also admits that another school secretary at A.P. Randolph who is also African American was allowed to attend several of the trainings that plaintiff claims were denied to her.  <u>See</u> Ex. B (Pl. Dep.) at 100:4 – 101:10.

83.     Plaintiff also admits that she did not file an internal complaint of discrimination with OEO in regard to these trainings.  <u>See</u> Ex. B (Pl. Dep.) at 103:4-8.

**<u>Alleged Hostile Work Environment:   Alleged Favoritism Toward Other Employees and Alleged Race-Based Comments</u>**

*Meals*

84.     Plaintiff contends that Principal Rubio had "parties" in his conference room on multiple occasions where he shared food with other employees whom plaintiff testified she perceived were his "friends."  <u>See</u> Ex. B (Pl. Dep.) at 203:8 – 205:17.

85.     Plaintiff acknowledges that she does not know whether these "parties" were sponsored by the school.  <u>See</u> Ex. B (Pl. Dep.) at 203:8 – 205:17.

86.     Plaintiff acknowledges that one or more of the school aides working in the school invited her to join these "parties" on multiple occasions, but plaintiff nonetheless declined these invitations.  <u>See</u> Ex. B (Pl. Dep.) at 203:8 – 205:17.

87.     Plaintiff alleges that Assistant Principal Garcia and another employee at A.P. Randolph, Daniel Calcano, regularly had other Hispanic employees in their offices chatting or sharing meals, and that she never saw "African-Americans being invited."  <u>See</u> Ex. B (Pl. Dep.) at 254:13 – 256:2

88.     Daniel Calcano ("Calcano") was an attendance teacher and later a dean and an assistant principal at A.P. Randolph.  <u>See</u> Ex. B (Pl. Dep.) at 87:12-22.

89.     Mr. Calcano is of Hispanic national origin.  <u>See</u> Ex. E (Rubio Dep.) at 30:12-13.

90.     Plaintiff admits that she never had a meal with, nor did she ever invite any Hispanic member of the staff at A.P. Randolph, to share a meal with her.  <u>See</u> Ex. B (Pl. Dep.) at 255:5 – 256:2.

91.     Plaintiff admits that, on at least one occasion, Assistant Principal Garcia offered to share a Hispanic-Caribbean dish called mangu with plaintiff.  <u>See</u> Ex. B (Pl. Dep.) at 143:14 – 144:11.

*Alleged Comments by and Actions of Assistant Principal Garcia*

92.     As indicated above, Assistant Principal Garcia self-identifies as "black." <u>See</u> Ex. D (Garcia Dep.) at 34:4-25.

93.     Plaintiff alleges that another employee told her that Assistant Principal Garcia used the word "germans" as a code word to refer to African American employees.  <u>See</u> Ex. B (Pl. Dep.) at 187:7 – 188:7.

94.     Plaintiff claims that Assistant Principal Garcia asked plaintiff questions along the lines of: "why do[] black girls wear -- put Vaseline on their face and tie their hair, their heads, with head scarves when they're about to fight?"  <u>See</u> Ex. B (Pl. Dep.) at 159:17-25.

95.     Plaintiff did not mention this allegation in her Complaint.  <u>See</u> Ex. A (Compl.).

96.     In her interrogatory responses, plaintiff claimed that Assistant Principal Garcia made this alleged comment "[o]n one occasion in 2011."  <u>See</u> Ex. W (Pl. Disc. Resp.) at 5.

97.     In her deposition plaintiff claimed – for the first time – that this took place multiple times between 2008 and 2010, and then claimed that this took place "over time," including under Principal Fanning, who didn't start at A.P. Randolph until December 2011. <u>See</u> Ex. B (Pl. Dep.) at 160:1 – 163:18.

98.     Plaintiff acknowledges that she never filed an OEO complaint concerning this alleged conduct.  <u>See</u> Ex. B (Pl. Dep.) at 163:13-18.

99.     According to plaintiff, on September 10, 2009, Assistant Principal Garcia stated "don't those people know that they are lactose intolerant" in regard to an African American support staff member's statement on the radio that he was in the restroom, and then allegedly turned to plaintiff and stated something along the lines of "right, Ms. Bastian, right?" See Ex. A (Compl.) ¶ 24; Ex. B (Pl. Dep.) at 114:18 – 115:15.

100.    Plaintiff acknowledges that, after she met with Assistant Principal Menegatos to report Garcia's alleged comment about lactose intolerance, Assistant Principal Menegatos reminded plaintiff of her rights under Chancellor's Regulation A-830 and invited plaintiff to follow up by filing a complaint as outlined in that regulation.  See Ex. A (Compl.) ¶ 26; Ex. B (Pl. Dep.) at 115:16-21; Ex. M (Pl. 9/11/09 E-mail).

101.    Plaintiff responded to this e-mail, stating that she "appreciate[d] [Assistant Principal Menegatos's] continual professionalism."  See Ex. M (Pl. 9/11/09 E-mail).

102.    Plaintiff testified that, rather than file an internal discrimination complaint with OEO via the online link made available to file such complaints, plaintiff waited a few days then "verbally" reported the incident to an OEO officer, who once again instructed plaintiff that she would have to file a complaint via the online link.  See Ex. B (Pl. Dep.) at 115:16 - 116:21.

103.    Plaintiff admits that she did not follow these instructions to file a complaint via the link or do anything else to follow up on this incident at or about the time it allegedly occurred.  See Ex. B (Pl. Dep.) at 115:16 - 116:21.

104.    On December 7, 2011, Assistant Principal Garcia was allegedly having breakfast with one of the other employees that worked at A.P. Randolph when plaintiff entered Garcia's office.  Assistant Principal Garcia allegedly first offered plaintiff some mangu, a

Hispanic-Caribbean dish, which plaintiff declined. Assistant Principal Garcia then allegedly offered to buy plaintiff some grits. <u>See</u> Ex. A (Compl.) ¶ 32; Ex. B (Pl. Dep.) at 142:12 – 145:6.

105. Following this incident, plaintiff complained to Assistant Principal Menegatos, and e-mailed Assistant Principal Menegatos about plaintiff's alleged offer of grits. <u>See</u> Ex. B (Pl. Dep.) at 145:11-19, 147:11-19; Ex. A (Compl.) ¶ 33.

106. In this e-mail, plaintiff acknowledged that this alleged offer was not meant to be offensive, stating that Garcia did "not recognize[e] that his comment regarding the stereotypical connotation of the word *grits* had insulted [plaintiff]." <u>See</u> Ex. S (Dec. 11, 2011 E-mails).

107. Assistant Principal Menegatos responded to plaintiff and once again e-mailed plaintiff a copy of Chancellor's Regulation A-830, as well as a link to file a complaint with the DOE OEO Office "if [she] fe[lt] that [she] ha[d] been offended or discriminated in any way." <u>See</u> Ex. S (Dec. 11, 2011 E-mails); Ex. B (Pl. Dep.) at 145:11-19, 147:11-19; Ex. A (Compl.) ¶ 33.

108. Plaintiff alleges that she did file a discrimination complaint with OEO about this comment  However, plaintiff nonetheless also testified that she only ever filed one complaint with OEO, that complaint was made in May 2012 and concerned guidance hirings at A.P. Randolph, and that she had not separately reported the grits comment to OEO. <u>See</u> Ex. B (Pl. Dep.) at 137:8-11; 147:11-25; 222:13-23.

109. Plaintiff testified that, in 2012, Assistant Principal Garcia played classical music loudly in his office and repeatedly asked plaintiff if the music was bothering her. <u>See</u> Ex. B (Pl. Dep.) at 120:8 – 122:22; Ex. A (Compl.) ¶ 31.

110. According to plaintiff, these questions were not meant sincerely, but were instead meant to insinuate that she would not appreciate classical music because of her race. <u>See</u> Ex. B (Pl. Dep.) at 121:6 – 125:17; Ex. A (Compl.) ¶ 31.

111. Plaintiff admits that she did not file an OEO complaint against Assistant Principal Garcia for this alleged conduct. <u>See</u> Ex. B (Pl. Dep.) at 127:18-19.

112. Plaintiff also alleges that Assistant Principal Garcia would blast his music and that the radio in Assistant Principal Garcia's office would go off at times when he was not in his office, as if it were on a timer. <u>See</u> Ex. B (Pl. Dep.) at 131:4-17.

113. Plaintiff alleges that this radio playing was meant to create a hostile work environment because of plaintiff's race because Assistant Principal Garcia could have taken the radio to other parts of the building, rather than keep it in his office. <u>See</u> Ex. B (Pl. Dep.) at 132:4 – 133:4.

114. Plaintiff acknowledges that Assistant Principal Garcia's assistant, whom plaintiff testified she understood was Hispanic and sat directly outside Assistant Principal Garcia's office, was also subject to this purportedly loud radio playing. <u>See</u> Ex. B (Pl. Dep.) at 134:8 – 135:17.

115. Plaintiff also acknowledges that, after she complained to Principal Fanning about the radio playing, that she did not hear it any more. <u>See</u> Ex. B (Pl. Dep.) at 133:9-22.

116. Plaintiff also admits that she never complained to OEO about Garcia's radio playing. <u>See</u> Ex. B (Pl. Dep.) at 136:8-10.

117.    According to plaintiff's testimony, in the Spring of 2012,[4] Assistant Principal Garcia put up a poster of Malcolm X in the office suite that plaintiff and Assistant Principal Garcia shared.  See Ex. B (Pl. Dep.) at 165:18 – 166:7.

118.    Plaintiff contends that Assistant Principal Garcia stated "fight the power" when plaintiff asked him about the poster.  See Ex. B (Pl. Dep.) at 173:6-9.

119.    Plaintiff claims that she complained about the poster to Principal Fanning and that the poster was later taken down.  See Ex. B (Pl. Dep.) at 173:19-22.

120.    Plaintiff acknowledged that she never filed an OEO complaint about this alleged action.  See Ex. B (Pl. Dep.) at 174:6-10.

121.    On a school day when students were "dress[ed] up in different themes,"[5] Assistant Principal Garcia also dressed up and wore an afro wig.  See Ex. B (Pl. Dep.) at 153:7 – 155:20; Ex. D (Garcia Dep.) at 34:4-25.

122.    While plaintiff alleges that Assistant Principal Garcia also wore a hair pick and a dashiki, both Assistant Principal Garcia and Principal Fanning testified that Assistant Principal Garcia was actually dressed in the style of a hippie or Jimi Hendrix.  See Ex. B (Pl. Dep.) at 155:11-12; Ex. C (Fanning Dep.) at 55:6 – 56:11; Ex. D (Garcia Dep.) at 102:8 -103:19.

---

[4] Plaintiff claims that this took place during the aftermath of the Trayvon Martin shooting, which occurred in February 2012. See Ex. B (Pl. Dep.) at 170:3-5.

[5] In her deposition, plaintiff states this took place right before the end of the school year in 2010 or 2011, but also claims that Principal Fanning, who did not join A.P. Randolph until December 2011 was present.  See Ex. B (Pl. Dep.) at 153:7 – 159:16; Ex. C (Fanning Dep.) at 7:11 – 8:9. In her interrogatory responses, plaintiff claims this took place in the Spring of 2013, despite the fact that Assistant Principal Garcia no longer worked at A.P. Randolph at that time. See Ex. D (Garcia Dep.) at 11:5 – 12:14; Ex. W (Pl. Disc. Resp.) at 5.

123.     Plaintiff alleges that, while Assistant Principal Garcia was dressed up, he made a comment to plaintiff along the lines of "More power to the people. Power sister."  See Ex. B (Pl. Dep.) at 153:23 – 155:20.

124.     Plaintiff acknowledges that she did not file an OEO complaint about this incident.  See Ex. B (Pl. Dep.) at 158:4-11.

*Alleged Teasing by Assistant Principal Menegatos*

125.     At some point in 2011, Assistant Principal Menegatos allegedly teased plaintiff by telling plaintiff that he was attempting to hire her but that the computer system would not accept plaintiff's social security number.  See Ex. A (Compl.) ¶ 27; Ex. B (Pl. Dep.) at 72:14 – 75:23.

126.     Plaintiff admits that she did not include this alleged teasing in any discrimination complaint to OEO.  See Ex. B (Pl. Dep.) at 75:7-23.

127.     Notably, in September 2008, Assistant Principal Menegatos agreed to supervise plaintiff as a School Counselor Intern at A.P. Randolph as part of plaintiff's course work for her Master's in Education degree.  See Ex. L (Sept. 2008 Supervisor Form); Ex. B (Pl. Dep.) at 35:20 – 36:8.

128.     Assistant Principal Menegatos also wrote plaintiff a letter of recommendation in support of plaintiff's search for a guidance counselor position.  See Ex. G (Menegatos Recommend.).

*Student's Alleged Comment and School's Reaction*

129.     In February 2011, a student at A.P Randolph allegedly called plaintiff a "stupid fucking nigger" because plaintiff refused to give the student a pass to leave the building. See Ex. B (Pl. Dep.) at 241:17 – 242:9, 253:18 – 254:4.

130.    Plaintiff allegedly reported this incident to Assistant Principal Garcia, who was the Assistant Principal for Security at A.P. Randolph, and Assistant Principal Daniel Calcano, who was a dean at A.P. Randolph.  See Ex. B (Pl. Dep.) at 244:8-14.

131.    Plaintiff acknowledges that, as a result of this incident, Assistant Principal Garcia suspended the student for five days.  See Ex. B (Pl. Dep.) at 244:1-7.

*Purchase of T-Shirts*

132.    During the 2013-2014 School Year, Assistant Principal Daniel Calcano allegedly purchased A.P. Randolph t-shirts and/or sweatshirts for members of the guidance department.  See Ex. B (Pl. Dep.) at 256:3-258:18.

133.    Plaintiff alleges that her position in the pupil personnel office falls within the same division that also includes the guidance department, but that she was not offered one of these t-shirts or sweatshirts.  See Ex. B (Pl. Dep.) at 256:3-258:18.

134.    Plaintiff acknowledges that other African American employees were given these t-shirts or sweatshirts.  See Ex. B (Pl. Dep.) at 256:3-258:18.

**Plaintiff's Internal Complaint in 2012 and Its Subsequent Referral to the Office of Special Investigations**

135.    On May 1, 2012, plaintiff filed a complaint with OEO concerning the hiring of Ms. Ramirez, Ms. Casey, Mr. Perez, and Ms. Paulino.  See Ex. T (OEO Compl.).

136.    In this complaint, plaintiff claimed she was discriminated against based on "ethnicity, race, retaliation" by Principal Rubio and Assistant Principal Menegatos in regard to the hiring of guidance counselors at A.P. Randolph during the 2010-2011 school year.  See Ex. T (OEO Compl.).

137.    Plaintiff did not name Assistant Principal Garcia, Assistant Principal Calcano, or any DOE officials in this complaint.  See Ex. T (OEO Compl.).

138. Plaintiff admits that this is the only OEO complaint that she has ever filed. See Ex. B (Pl. Dep.) at 137:8-11.

139. Plaintiff's complaint was assigned to Victoria Ajibade, a Title IX Attorney in the OEO office, and on May 17, 2012, Ms. Ajibade interviewed plaintiff to discuss her complaint. See Ex. U (OEO Memo.).

140. On May 22, 2012, OEO administratively closed plaintiff's complaint, noting that while plaintiff had expressed that she wanted to file a complaint about inappropriate hiring practices, she had not alleged that either Assistant Principal Rubio or Assistant Principal Menegatos "made any disparaging remarks regarding race or that they treated a particular race, disparately or negatively." See Ex. U (OEO Memo.).

141. Nevertheless, based on plaintiff's report of allegedly improper hiring practices, OEO determined to refer plaintiff's complaint to the Office of the Special Commissioner of Investigation for the New York City School District ("SCI") for further investigation. See Ex. U (OEO Memo.).

142. On May 23, 2012, this complaint was referred from SCI to the DOE Office of Special Investigations for further investigation. See Ex. V (OSI Memo.)

143. Bernadette Baumann, a Confidential Investigator for OSI, was assigned to the case and conducted an investigation into Plaintiff's complaint, wherein she interviewed multiple witnesses, including plaintiff, Principal Fanning, a human resources associate, Principal Rubio, and Assistant Principal Menegatos. See Ex. V (OSI Memo.).

144. On July 31, 2013, at the conclusion of its investigation, OSI determined that plaintiff's allegations about guidance counselors hired to work at A.P. Randolph during the 2010-2011 school year could not be substantiated. In doing so, the investigator noted that the

individuals hired all had extensive experience and the requisite credentials, while plaintiff lacked the requisite qualifications and experience. See Ex. V (OSI Memo.).

**Plaintiff's Applications for Guidance Counselor Positions with the DOE Outside of A.P. Randolph**

145.    Since 2009, plaintiff has applied for a number of other guidance counselor positions with the DOE, for which she has not been hired. See Ex. B (Pl. Dep.) at 94:18 – 95:18.

146.    Plaintiff admits that she is not claiming that any of these other positions within the DOE were discriminatorily denied to her. See Ex. B (Pl. Dep.) at 94:18 – 95:18.

**Additional Guidance Counselor Positions at A.P. Randolph that Plaintiff Has Applied For and Not Received, But Which She Does Not Assert Were Discriminatorily Denied**

147.    Plaintiff applied for a guidance counselor position at A.P. Randolph in June 2013. See Ex. A (Compl.) ¶¶ 48.

148.    Principal Fanning later informed plaintiff that this position was for Ms. Ramirez, who would be returning from maternity leave. See Ex. A (Compl.) ¶¶ 48-49.

149.    Plaintiff admits that this action was not discriminatory. See Ex. B (Pl. Dep.) at 230:12 – 231:6.

150.    At the end of the 2013-2014 school year, plaintiff applied for a guidance counselor opening under Principal Fanning at A.P. Randolph. See Ex. B (Pl. Dep.) at 93:24 – 94:11; Ex. C (Fanning Dep.) at 61:23 – 62:7.

151.    A hiring panel of approximately seven individuals, including two African American guidance counselors, considered approximately six individuals for this open position and plaintiff scored the worst of all individuals considered. See Ex. C (Fanning Dep.) at 67:23 – 72:10.

152. Principal Fanning testified that, while plaintiff may have the paper qualifications, he does not believe that plaintiff could be a good guidance counselor as plaintiff does not have "the background or experience [] working with students and people that would lead someone to be a good guidance counselor." <u>See</u> Ex. C (Fanning Dep.) at 70:2 – 72:10.

153. Plaintiff admits that she was not discriminatorily denied this position. <u>See</u> Ex. B (Pl. Dep.) at 93:24 – 94:11

154. Plaintiff continues to work at A.P. Randolph as the Pupil Accounting Secretary. <u>See</u> Ex. B (Pl. Dep.) at 17:23 – 18:5.

Dated:      New York, New York
            February 27, 2015

**ZACHARY W. CARTER**
Corporation Counsel of the
 City of New York
**Attorney for Defendant**
100 Church Street, Room 2-317
New York, New York 10007
(212) 356-2452

By: _____/s/_____
            Sean R. Renaghan
            Assistant Corporation Counsel