UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MELISSA BASTIAN,

Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*

*Attorney for Defendant*
*100 Church Street, Rm 2-317*
*New York, New York 10007*

*Of Counsel: Sean R. Renaghan*
*Tel: (212) 356-2452*
*Matter No.: 2013-041435*

Donald C. Sullivan,
Sean R. Renaghan,
  Of Counsel.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 2

ARGUMENT ....................................................................................................................... 2

      POINT I ................................................................................................................... 3

          PLAINTIFF'S SECTION 1981 CLAIMS MUST
          BE DISMISSED. .................................................................................... 3

      POINT II .................................................................................................................. 4

          PLAINTIFF'S CLAIMS ARE BARRED IN PART
          BY THE APPLICABLE STATUTE OF
          LIMITATIONS ....................................................................................... 4

      POINT III ................................................................................................................. 5

          PLAINTIFF'S DISPARATE TREATMENT
          CLAIM FAILS AND PLAINTIFF CANNOT
          ESTABLISH MONELL LIABILITY ...................................................... 5

          A.   The Majority of Plaintiff's Allegations Are Not
                Adverse Employment Actions ............................................. 5

          B.   Plaintiff's Allegations Did Not Arise Under
                Circumstances Giving Rise to An Inference of
                Discriminatory Intent .......................................................... 7

          C.   Plaintiff's Failure to Hire / Failure to Promote
                Claim Also Independently Fails Based on
                Defendant's Proffered Legitimate Business
                Reasons for Her Non-Selection .......................................... 11

          D.   Plaintiff Cannot Meet Her Burden to Establish
                That Any Action Taken Against Her Was the
                Product of a Municipal Policy ............................................ 12

      POINT IV ................................................................................................................. 19

          PLAINTIFF'S HOSTILE WORK
          ENVIRONMENT CLAIM FAILS AND

PLAINTIFF CANNOT ESTABLISH <u>MONELL</u>
LIABILITY.............................................................................................. 19

   A.   Plaintiff's Hostile Work Environment Claim
       Fails as a Matter of Law .................................................................. 19

   B.   Plaintiff Fails to Meet Her Burden to Establish
       That the Alleged Hostile Work Environment
       Was the Product of a Municipal Policy,
       Particularly as the Allegations Focus on the
       Alleged Statements and Actions of Assistant
       Principals ......................................................................................... 24

CONCLUSION.......................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

Abdul-Hakeem v. Parkinson,
   523 F. App'x 19 (2d Cir. 2013) ............................................. 5

Alfano v. Costello,
   294 F.3d 365 (2d Cir. 2002) ............................... 19, 20, 21, 23

Bermudez v. City of New York,
   783 F. Supp. 2d 560 (S.D.N.Y. 2011) ..................................... 3

Brown v. Coach Stores,
   163 F.3d 706 (2d Cir. 1998) ............................................. 23

Byrnie v. Town of Cromwell Bd. of Educ.,
   243 F.3d 93 (2d Cir. 2001) ............................................. 12

Celotex Corp. v. Catrett,
   477 U.S. 317 (1986) ..................................................... 3

D'Amico v. City of New York,
   132 F.3d 145 (2d Cir. 1998) ........................................ 10, 22

Davis v. City of New York,
   75 F. App'x 827 (2d Cir. 2003) ......................................... 13

Davis-Molinia v. Port Auth. of N.Y. & N.J.,
   08 CV 7584 (GBD), 2011 U.S. Dist. LEXIS 93868, 2011 WL 4000997
   (S.D.N.Y. Aug. 19, 2011) ............................................... 23

Davis-Molinia v. Port Auth. of N.Y. & N.J.,
   488 F. App'x 530 (2d Cir. 2012) ....................................... 23

Dressler v. New York City Dep't of Educ.,
   10 Civ. 3769 (JPO), 2012 U.S. Dist. LEXIS 44249, 2012 WL 1038600
   (S.D.N.Y. Mar. 28, 2012) ........................................... 16, 17

Farren v. Shaw Envtl., Inc.,
   510 F. App'x 44 (2d Cir. 2013) ......................................... 21

Fierro v. New York City Dep't of Educ.,
   994 F. Supp. 2d 581 (S.D.N.Y. 2014) ................................... 16

Fleming v. MaxMara USA, Inc.,
   371 F. App'x 115 (2d Cir. 2010) ....................................... 19

Galabya v. N.Y.C. Bd. of Educ.,
   202 F.3d 636 (2d Cir. 2000) ............................................................................. 6

Giscombe v. N.Y. City Dep't of Educ.,
   12 Civ. 464 (AT), 2014 U.S. Dist. LEXIS 114610, 2014 WL 3974582
   (S.D.N.Y. Aug. 12, 2014) ............................................................................... 17

Gladwin v. Pozzi,
   403 F. App'x 603 (2d Cir. 2010) ..................................................................... 3

Goins v. Bridgeport Hosp.,
   555 F. App'x 70 (2d Cir. 2014) ..................................................................... 19

Grady v. Affiliated Cent.,
   130 F.3d 553 (2d Cir. 1997) ............................................................................. 8

Grady v. Affiliated Cent.,
   525 U.S. 936 (1998) ......................................................................................... 8

Hernandez v. City of New York,
   No. 11-CV-3521 (SJ) (RER), 2013 U.S. Dist. LEXIS 31793, 2013 WL 593450
   (E.D.N.Y. Feb. 13, 2013) ................................................................................. 9

Hills v. City of New York,
   03 Civ. 4265 (WHP), 2005 U.S. Dist. LEXIS 3946, 2005 WL 591130
   (S.D.N.Y. Mar. 15, 2005) ................................................................................. 7

Hurdle v. Bd. of Educ.,
   113 F. App'x 423 (2d Cir. 2004) ................................................... 13, 14, 15, 16, 24

Hurdle v. Bd. of Educ.,
   544 U.S. 921 (2005) ....................................................................................... 13

James v. N.Y. Racing Ass'n,
   233 F.3d 149 (2d Cir. 2000) ............................................................................. 5

Jeffes v. Barnes,
   208 F.3d 49 (2d Cir. 2000) ....................................................................... 13, 24

Jett v. Dallas Indep. Sch. Dist.,
   491 U.S. 701 (1989) ......................................................................................... 3

Johnson v. New York City Dep't of Educ.,
   10-CV-2604 (WFK), 2014 U.S. Dist. LEXIS 119158, 2014 WL 4090844
   (E.D.N.Y. Aug. 19, 2014) ........................................................................... 8, 22

Ko Sheng Chuang v. T.W. Wang Inc.,
   647 F. Supp. 2d 221 (E.D.N.Y. 2009) ............................................................. 9

Kulak v. City of New York,
  88 F.3d 63 (2d Cir. 1996) ................................................................................ 3, 22

La Grande v. DeCrescente Distrib. Co.,
  370 F. App'x 206 (2d Cir. 2010) ................................................................................ 6

Lawson v. Rochester City Sch. Dist.,
  446 F. App'x 327 (2d Cir. 2011) ............................................................................... 4

Malcolm v. Honeoye Falls Lima Cent. Sch. Dist.,
  483 F. App'x 660 (2d Cir. 2012) ............................................................................... 6

McDonald v. Bd. of Educ.,
  01 Civ. 1991 (NRB), 2003 U.S. Dist. LEXIS 13338, 2003 WL 21782685
  (S.D.N.Y. Jul. 31, 2003) ......................................................................................... 17

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) ........................................... 5

McGuinness v. Lincoln Hall,
  263 F.3d 49 (2d Cir. 2001) ..................................................................................... 10

McKinney v. DOT,
  487 F. App'x 605 (2d Cir. 2012) ............................................................................. 19

Monell v. Dep't of Soc. Servs.,
  436 U.S. 658 (1978) ........................................................................................... 12, 13

Moore v. City of New York,
  No. 08 Civ. 8879, 2010 U.S. Dist. LEXIS 19183, 2010 WL 742981
  (S.D.N.Y. Mar. 1, 2010) ........................................................................................ 16

Morales v. Rooney,
  509 F. App'x 9 (2d Cir. 2013) .................................................................................. 5

Norville v. Staten Island Univ. Hosp.,
  196 F.3d 89 (2d Cir. 1999) ....................................................................................... 5

Nugent v. St. Luke's/Roosevelt Hosp. Ctr.,
  05 Civ. 5109 (JCF), 2007 U.S. Dist. LEXIS 28274, 2007 WL 1149979
  (S.D.N.Y. Apr. 18, 2007)........................................................................................ 24

Nugent v. St. Luke's/Roosevelt Hosp. Ctr.,
  303 F. App'x 943 (2d Cir. 2008) ............................................................................ 24

Oncale v. Sundowner Offshore Servs., Inc.,
  523 U.S. 75 (1998).......................................................................................... 20, 21

Patterson v. County of Oneida,
  375 F.3d 206 (2d Cir. 2004) ................................................................................ 13

Pearson v. Merrill Lynch & Bank of Am.,
  No. 10 Civ. 5119 (RJS), 2012 U.S. Dist. LEXIS 39456, 2012 WL 983546
  (S.D.N.Y. Mar. 22, 2012) ..................................................................................... 7

Pembaur v. City of Cincinnati,
  475 U.S. 469 (1986).................................................................................... 14, 15

Perry v. Ethan Allen, Inc.,
  115 F.3d 143 (2d Cir. 1997) ................................................................................ 20

Philippeaux v. North Cent. Bronx Hosp.,
  No. 96-7362, 1996 U.S. App. LEXIS 30736, 1996 WL 680758
  (2d Cir. Nov. 22, 1996).......................................................................................... 13

Reeves v. Sanderson Plumbing Prods., Inc.,
  530 U.S. 133 (2000)................................................................................................ 3

Samuels v. N.Y. State Dep't of Corr. Servs.,
  94 Civ. 8645, 1997 U.S. Dist. LEXIS 6739, 1997 WL 253209
  (S.D.N.Y. May 14, 1997)......................................................................................... 7

Shapiro v. N.Y. City Dep't of Educ.,
  561 F. Supp. 2d 413 (S.D.N.Y. 2008) .................................................................. 16

Smalls v. Allstate Ins. Co.,
  396 F. Supp. 2d 364 (S.D.N.Y. 2005) .................................................................... 6

Smith v. Planas,
  975 F. Supp. 303 (S.D.N.Y. 1997) ......................................................................... 7

St. Louis v. Praprotnik,
  485 U.S. 112 (1988)................................................................................. 15, 18, 19

St. Mary's Honor Ctr. v. Hicks,
  509 U.S. 502 (1993)................................................................................................ 5

Walker v. City of New York,
  11 Civ. 2941 (KPF), 2014 U.S. Dist. LEXIS 41287, 2014 WL 1244778
  (S.D.N.Y. Mar. 26, 2014) ....................................................................................... 3

White v. Pacifica Found.,
  973 F. Supp. 2d 363 (S.D.N.Y. 2013) .................................................................... 7

**Statutes**

42 U.S.C. § 1981 ................................................................................................... passim

42 U.S.C. § 1983 ................................................................................................... passim

N.Y. Educ. Law § 2590-g .................................................................................... 17, 18

N.Y. Educ. Law § 2590-h .................................................................................... 17, 18

N.Y. Educ. Law § 2590-i ........................................................................................... 18

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................................... 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------- X

MELISSA BASTIAN,

                            Plaintiff,        13 Civ. 5972 (ALC) (GWG)

                -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

                           Defendant.
--------------------------------------------------------------------- X

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT**

## PRELIMINARY STATEMENT

Plaintiff Melissa Bastian ("Bastian" or "Plaintiff") alleges that she was
discriminated against and subjected to a hostile work environment because of her African
American race in violation of 42 U.S.C. §§ 1981 and 1983.[1]  Specifically, plaintiff, who is a
school secretary at the Department of Education's ("DOE") A. Philip Randolph High School
("A.P. Randolph"), alleges that she was discriminatorily denied a guidance counselor position,
was treated less well in job and office assignments than Hispanic colleagues and subjected to
allegedly race-based comments.  The sole defendant, the DOE, denies plaintiff's allegations and
respectfully moves for summary judgment because the record shows that no reasonable jury
could find for plaintiff.  As set forth herein, the record shows that plaintiff cannot support her
claims and that, even if she could, she cannot establish <u>Monell</u> liability against the DOE.

---

[1] In her deposition testimony plaintiff also claimed that she had been discriminated against on the
basis of age, but later recanted this claim after producing no factual allegations in support. <u>See</u>
Ex. B (Pl. Dep.) at 23:5-9, 176:14 – 177:4.  Plaintiff had not raised this claim in the Complaint.
<u>See</u> Ex. A (Compl.).

As an initial matter, many of plaintiff's claims, which date back to the hiring of Principal Henry Rubio ("Principal Rubio") in 2006, are barred by the applicable statute of limitations.  Plaintiff's claims of discriminatory treatment also not only largely fail to amount to adverse employment actions, but also cannot be said to have occurred under circumstances giving rise to an inference of discriminatory intent.  Beyond the fact that there was a legitimate business reason for not hiring plaintiff, as plaintiff does not possess the license held by every guidance counselor hired under Principal Rubio after she allegedly applied for the position, the first two individuals hired for guidance counselor positions under Principal Rubio were both African American.  Ultimately, these claims of disparate treatment, which plaintiff attributes to the tenure of one specific principal, also fail as plaintiff has not produced evidence to meet her burden to establish that her alleged treatment was the product of municipal policy.

Plaintiff's hostile work environment claim also fails.  Given the sporadic, and largely innocuous nature of these comments, plaintiff cannot establish a hostile environment claim.  Further, plaintiff cannot meet her burden to show that the alleged hostile work environment was the product of a municipal policy, particularly given that these allegations focus on one assistant principal and are based on plaintiff's repeated admissions that the purportedly hostile environment was not supported by any principal before or after Principal Rubio.

## STATEMENT OF FACTS

For a full statement of the undisputed facts, the DOE respectfully refers the Court to its annexed Local Civil Rule 56.1 Statement of Undisputed Facts, dated February 27, 2015.

## ARGUMENT

A motion for summary judgment must be granted if "the movant shows that there

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine dispute of material fact exists, "the court must draw all reasonable inferences in favor of the nonmoving party," Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000), but the nonmovant's conjecture "will not defeat summary judgment," Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996).

Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In that situation, "there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. As will be discussed below, plaintiff here has the burden of proof regarding all the elements of her claims. Because she cannot meet this standard, her claims should be dismissed.

## POINT I
### PLAINTIFF'S SECTION 1981 CLAIMS MUST BE DISMISSED.

When the defendant is a state actor, Section 1983 is the exclusive remedy for violations of rights guaranteed under Section 1981. See Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 733 (1989); see also Gladwin v. Pozzi, 403 F. App'x 603, 605 (2d Cir. 2010) (plaintiff's § 1981 claims are "encompassed" by her § 1983 claims); Walker v. City of New York, 11 Civ. 2941 (KPF), 2014 U.S. Dist. LEXIS 41287, at *24 n.6, 2014 WL 1244778 (S.D.N.Y. Mar. 26, 2014); Bermudez v. City of New York, 783 F. Supp. 2d 560, 576 (S.D.N.Y. 2011). Here, plaintiff proceeds solely under §§ 1981 and 1983 against the DOE, a municipal city school

district operating under Article 52-A of the New York Education Law.  See Ex. A (Compl.).[2]

Accordingly, Plaintiff's claims which seek relief under § 1981 must be dismissed.

## POINT II

## PLAINTIFF'S CLAIMS ARE BARRED IN PART BY THE APPLICABLE STATUTE OF LIMITATIONS

"The statute of limitations for a § 1983 claim arising in New York is three years" Lawson v. Rochester City Sch. Dist., 446 F. App'x 327, 328 (2d Cir. 2011).  Here, plaintiff did not file her complaint until August 23, 2013.  See Ex. A (Compl.).  Accordingly, all of plaintiff's claims that accrued prior to August 23, 2010, are barred by the statute of limitations.

Plaintiff makes a number of allegations regarding the purported hiring of and assignments given to community associates, who were allegedly mostly Hispanic, shortly after Principal Rubio's start at A.P. Randolph in November 2006, job and office assignments given to plaintiff during the 2007-2008 and 2008-2009 school years, and trainings allegedly denied to plaintiff during the 2008-2009 and 2009-2010 school years.  See Ex. A (Compl.) ¶¶ 12-22. Plaintiff also alleges that Assistant Principal Gilberto Garcia ("Assistant Principal Garcia") made allegedly discriminatory comments to her during the 2009-2010 school year and prior, including a purported comment about lactose intolerance.  See id. ¶ 23-26.  Because all of these allegations took place before August of 2010, they are barred by the statute of limitations.[3]

---

[2] Unless otherwise noted, all exhibits referenced are annexed to the Declaration of Sean R. Renaghan, dated February 27, 2015 ("Renaghan Decl.").

[3] Even if plaintiff's claims under Section 1981 were to survive, "the statute of limitations for a § 1981 claim is four years."  Lawson, 446 F. App'x at 328.  As such, the vast majority of the allegations discussed above, having taken place prior to the 2009-2010 school year, nevertheless remain time barred.

## POINT III

## PLAINTIFF'S DISPARATE TREATMENT CLAIM FAILS AND PLAINTIFF CANNOT ESTABLISH <u>MONELL</u> LIABILITY.

"The substantive standards for employment discrimination claims under §§ 1981 and 1983 mirror those for claims under Title VII . . . except that the former provisions always require a showing of discriminatory intent." <u>Morales v. Rooney</u>, 509 F. App'x 9, 10 (2d Cir. 2013). As such, plaintiff's discrimination claims are governed by the familiar burden-shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). Plaintiff must first establish a prima facie case by demonstrating that: "1) she is a member of a protected class; 2) she was qualified for . . . [the] position [at issue]; 3) she suffered an adverse employment action; and 4) the action occurred under circumstances giving rise to an inference of discrimination." <u>Norville v. Staten Island Univ. Hosp.</u>, 196 F.3d 89, 95 (2d Cir. 1999); <u>see also</u> <u>Abdul-Hakeem v. Parkinson</u>, 523 F. App'x 19, 20 (2d Cir. 2013).

If plaintiff is able to establish a prima facie case, the burden of production – but not of persuasion – shifts to the defendant employer to set forth a legitimate, non-discriminatory reason for its action. <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 509 (1993). Once defendant satisfies this burden, plaintiff bears the ultimate burden of persuasion and must demonstrate that defendant's justification is a pretext for unlawful discrimination. <u>Id.</u> at 510-11; <u>James v. N.Y. Racing Ass'n</u>, 233 F.3d 149, 154 (2d Cir. 2000) ("[T]he employer will be entitled to summary judgment…unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination").

## A.     The Majority of Plaintiff's Allegations Are Not Adverse Employment Actions

In the context of a discrimination claim, "[a] plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions

of employment." <u>Malcolm v. Honeoye Falls Lima Cent. Sch. Dist.</u>, 483 F. App'x 660, 662 (2d Cir. 2012) (citing <u>Galabya v. N.Y.C. Bd. of Educ.</u>, 202 F.3d 636, 640 (2d Cir. 2000)). For an employment action to be materially adverse, it must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." <u>Id.</u> Thus, "[e]veryday workplace grievances, disappointments, and setbacks do not constitute adverse employment actions." <u>La Grande v. DeCrescente Distrib. Co.</u>, 370 F. App'x 206, 211 (2d Cir. 2010).

As discussed above, many of plaintiff's allegations of disparate treatment are independently barred by the statute of limitations. <u>See</u> Point II, <u>supra</u>. Nonetheless, aside from plaintiff's alleged refusal to hire / refusal to promote claim,[4] none of the actions alleged by plaintiff amount to adverse employment actions. These other disparate treatment claims consist of plaintiff's allegations that plaintiff was assigned tasks she felt were beneath her,[5] was assigned to work <u>part time</u> out of an office that she believes was not suitable, was not offered a t-shirt or sweatshirt, and was denied permission to attend select trainings. <u>See</u> Ex. A (Compl.) ¶¶ 18-20; Ex. B (Pl. Dep.) at 97:9 – 102:25, 103:7 – 104:2, 191:3 – 192:9, 209:2-21, 256:3-258:18. Because these are "[e]veryday workplace grievances," they are insufficient to support a disparate treatment claim. <u>See</u> <u>La Grande</u>, 370 F. App'x at 211; <u>see also</u> <u>Smalls v. Allstate Ins. Co.</u>, 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005) ("unfavorable schedules or work assignments . . . do not rise to the level of adverse employment actions").

---

[4] As shown in Subsection C, <u>infra</u>, legitimate business reasons support her non-selection. Further, although plaintiff characterizes this as a failure to promote claim, plaintiff has produced no evidence that the guidance counselor position plaintiff desired was in the line of promotion for plaintiff's current position as a school secretary.

[5] Plaintiff, who is a school secretary, describes these tasks to include: photocopying, shredding, scanning books, accounting for book receipts, delivering correspondence and other items within the school, and "picking up [her] own supplies." <u>See</u> Ex. B (Pl. Dep.) at 191:3 – 192:9.

**B.     Plaintiff's Allegations Did Not Arise Under Circumstances Giving Rise to An Inference of Discriminatory Intent**

The record also precludes plaintiff from credibly contending that <u>any</u> action involving her took place under circumstances giving rise to an inference of discriminatory intent.

An inference of discriminatory intent does not exist where the benefit allegedly deprived or refused was also nonetheless provided by the alleged discriminator to members of the same protected class.  <u>See</u> <u>White v. Pacifica Found.</u>, 973 F. Supp. 2d 363, 381 (S.D.N.Y. 2013) ("The fact that Plaintiff was replaced by a member of the same protected class further undermines any inference of discriminatory intent"); <u>Pearson v. Merrill Lynch & Bank of Am.</u>, No. 10 Civ. 5119 (RJS), 2012 U.S. Dist. LEXIS 39456, at *25, 2012 WL 983546 (S.D.N.Y. Mar. 22, 2012) ("An inference of discriminatory intent does not exist when the plaintiff and his or her replacement are of the same protected category");   <u>Hills v. City of New York</u>, 03 Civ. 4265 (WHP), 2005 U.S. Dist. LEXIS 3946, at *14, 2005 WL 591130 (S.D.N.Y. Mar. 15, 2005) ("there can be no inference of racial discrimination because two officers reassigned to steady tours were African American"); <u>Samuels v. N.Y. State Dep't of Corr. Servs.</u>, 94 Civ. 8645, 1997 U.S. Dist. LEXIS 6739, at *5, 1997 WL 253209 (S.D.N.Y. May 14, 1997) (no prima facie case of race discrimination where two of the four persons promoted were members of plaintiff's protected class); <u>Smith v. Planas</u>, 975 F. Supp. 303, 308 (S.D.N.Y. 1997) (no prima facie case of race discrimination where "[f]ive of the seven individuals identified by Plaintiff as having received higher-paying assignments were . . . members of Plaintiff's protected class").

Plaintiff contends she was discriminatorily denied a guidance counselor position because she is African American.  <u>See</u> Ex. A (Compl.) ¶¶ 37-47, 55.  In contrast to plaintiff's allegations about discrimination, however, the record shows that the first two guidance counselors hired under Principal Rubio, including the counselor hired most immediately after

plaintiff allegedly expressed interest in the position, are each, like plaintiff, African American. See Ex. F (Sullivan Decl.) at ¶¶ 7-11. In total, of the six guidance counselors that were hired under Principal Rubio – including the four positions plaintiff challenges in this action[6] – two self-identify as Black or African American, two self-identify as White, and two self-identify as Hispanic. See Ex. F (Sullivan Decl.) at ¶¶ 7-20. As such, the record contradicts any suggestion by plaintiff that Principal Rubio harbored discriminatory animus against African Americans. It need only be added that the record does not support any suggestion that the DOE itself, the sole defendant in this action, discriminated against African Americans in its hiring practices.

Moreover, plaintiff concedes that two of the benefits she was allegedly denied, permission to attend select trainings[7] and a t-shirt, were provided to other African American staff members. See Ex. B (Pl. Dep.) at 100:4 – 101:10, 256:3 – 258:18.

Further, courts regularly hold that if the alleged discriminator previously selected the plaintiff for favorable treatment, it is strong evidence that the actor holds no discriminatory animus. See Grady v. Affiliated Cent., 130 F.3d 553, 560 (2d Cir. 1997) (noting that "some factors strongly suggest that invidious discrimination was unlikely," and giving the example of "when the person who made the decision to fire was the same person who made the decision to hire"), cert. denied 525 U.S. 936 (1998); Johnson v. New York City Dep't of Educ., 10-CV-2604 (WFK), 2014 U.S. Dist. LEXIS 119158, at *22, 2014 WL 4090844 (E.D.N.Y. Aug. 19, 2014) ("The Court agrees with Defendants that the receipt of the commendation actually undermines Plaintiff's claim that . . . [the principal] was motivated by discriminatory animus") (internal

---

[6] Plaintiff did not formally apply for any of these positions. See Subsection C, infra.

[7] Notably, plaintiff admits that she attend other trainings that her supervisor felt necessary for plaintiff to perform her job, and on the occasions she was denied, plaintiff informed that she couldn't go because she was needed in the building. See Ex. B (Pl. Dep.) at 97:9 – 101:8.

quotations omitted); <u>Ko Sheng Chuang v. T.W. Wang Inc.</u>, 647 F. Supp. 2d 221, 233 (E.D.N.Y. 2009) ("It is difficult to impute bias against a plaintiff in a protected class where the person making the adverse employment decision also made a recent favorable employment decision regarding the plaintiff").

Here, plaintiff's claims of disparate treatment focus on her direct supervisor, Assistant Principal Gerasimos Menegatos ("Assistant Principal Menegatos"), and Principal Rubio. <u>See</u> Ex. A (Compl.) ¶¶ 12-22, 37-47; Ex. B (Pl. Dep.) at 95:19 – 96:13, 97:9 – 101:8, 103:7 – 108:10, 191:3 – 192:9, 203:8 – 205:17, 209:2-21, 221:17 – 222:8.   However, the record shows that both treated plaintiff favorably during their time at A.P. Randolph.   Assistant Principal Menegatos supported plaintiff in her quest to become a guidance counselor by both agreeing to supervise plaintiff in a guidance counselor internship and by providing plaintiff with a letter of recommendation for guidance counselor positions.  <u>See</u> Ex. L (Sept. 2008 Supervisor Form); Ex. G (Menegatos Recommend.).  Similarly, not only did Principal Rubio repeatedly rate plaintiff satisfactorily as a school secretary and thank her for her efforts, but an e-mail that plaintiff herself produced shows that, when asked, he also sought to help plaintiff build her resume by getting some guidance counselor experience at A.P. Randolph.  <u>See</u> Ex. I (2007-2011 APPR); Ex. X (Feb. 5, 2010 E-mail).

Additionally, while a plaintiff may raise an inference of discrimination by alleging that she was treated less favorably than a similarly situated employee not in the plaintiff's protected group, such allegations must demonstrate that the other employees are "sufficiently similar 'to support at least a minimal inference that the difference of treatment may be attributable to discrimination.'"  <u>Hernandez v. City of New York</u>, No. 11-CV-3521 (SJ) (RER), 2013 U.S. Dist. LEXIS 31793, at *12, 2013 WL 593450 (E.D.N.Y. Feb. 13, 2013) (citing

McGuinness v. Lincoln Hall, 263 F.3d 49, 54 (2d Cir. 2001)).

Here, while plaintiff claims that her job assignments were discriminatory because Hispanic individuals in the positions of "community associate" or "community assistant" were allegedly given better assignments, plaintiff can point to no evidence from which the Court could conclude that the individuals she is referring to are similarly situated to her. See Ex. A (Compl.) ¶¶ 14-18. In fact, as plaintiff repeatedly effectively concedes, the individuals she compares herself to had different titles than hers and did not share the same licenses or job responsibilities. See id. ¶¶ 9, 15, 17; Ex. B (Pl. Dep.) at 101:14 – 102:3, 201:6 – 202:14.

Finally, while plaintiff makes numerous allegations about statements that she claims were discriminatory and racially charged, these statements were almost exclusively made by an assistant principal whom plaintiff does not claim had any influence in any of these alleged acts of disparate treatment. See Ex. A (Compl.) ¶¶ 24-32, Ex. B (Pl. Dep.) at 114:18 – 115:15, 120:8 – 122:22, 131:4-17, 142:12 – 145:6, 153:7 – 155:20, 159:17-25, 165:18 – 166:7, 242:9 – 244:24, 256:3-258:18.

Accordingly, plaintiff's claim of discriminatory intent rests entirely on her self-serving and conclusory allegations that are insufficient to withstand summary judgment and are rebutted by record evidence. See D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998) ("The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful"). As such, plaintiff cannot point to evidence sufficient to show that the alleged disparate treatment took place under circumstances that give rise to an inference of discrimination.

**C.** **Plaintiff's Failure to Hire / Failure to Promote Claim Also Independently Fails Based on Defendant's Proffered Legitimate Business Reasons for Her Non-Selection**

Plaintiff claims that she expressed interest to Principal Rubio in a guidance position at the end of the 2008-2009 school year. See Ex. A (Compl.) ¶ 22, 38-40; Ex. B (Pl. Dep.) at 221:17 – 222:8. While plaintiff claims that she should have both been considered for and given one of the four guidance positions filled more than a year later – during the 2010-2011 school year – she admits that she never formally applied for any of these positions. See Ex. A (Compl.) ¶¶ 38-40; Ex. B (Pl. Dep.) at 41:14-17, 66:13 – 67:2, 71:18-24, 81:6-11.[8]

Additionally, while plaintiff makes much of the fact that some of the guidance counselors hired to work at Randolph were placed in monolingual titles, the undisputed record shows that plaintiff was told that the school was only hiring bilingual guidance counselors and each guidance counselor hired between when plaintiff was told this and Principal Rubio's departure possessed a bilingual certification. See Ex. A (Compl.) ¶ 22; Ex. B (Pl. Dep.) at 48:19-22, 225:18-20; Ex. F (Sullivan Decl.) at ¶ 12; Ex. N (Ramirez Info.); Ex. O (Casey Info.); Ex. Q (Perez Info.); Ex. R (Paulino Info.). This need for bilingual guidance counselors is unsurprising given the school's predominantly Hispanic student population. See Ex. F (Sullivan Decl.) at ¶ 5.

Plaintiff, who has never held anything more than an internship as a guidance counselor, by contrast, admits she does not have a bilingual certification. See Ex. B (Pl. Dep.) at 33:20-25; Ex. H (Pl. Resume). Further, rather than being a highly qualified candidate, Principal Fanning, whom plaintiff has repeatedly testified did not discriminate against her, testified that he recently convened a hiring panel[9] for a guidance opening and plaintiff scored the worst of all the

---

[8] Further, while plaintiff alleges that these positions were never posted, she acknowledges that she is not certain of that allegation and may have missed the posting. See id. at 227:24 – 228:14.

[9] This panel of approximately seven people included two African American guidance counselors. See Ex. C (Fanning Dep.) at 69:6-11.

candidates considered.  <u>See</u> Ex. C (Fanning Dep.) at 67:23 – 72:10.  When asked to elaborate, Principal Fanning testified that, while plaintiff may be a great school secretary, he does not believe she could be a good guidance counselor.[10]  <u>See id.</u>  Notably, plaintiff has also been denied a number of other guidance positions at other schools. As such, there was a legitimate, non-discriminatory reason to hire the individuals at issue.  Plaintiff, whose claim, as demonstrated above, seems to come down to the race of only those specific candidates whose hiring she challenges,[11] cannot show any evidence that would even approach her burden in order to survive summary judgment on this issue. See <u>Byrnie v. Town of Cromwell Bd. of Educ.</u>, 243 F.3d 93, 103 (2d Cir. 2001) ("When a plaintiff seeks to prevent summary judgment on the strength of a discrepancy in qualifications . . . the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question'") (citations omitted).

**D.  Plaintiff Cannot Meet Her Burden to Establish That Any Action Taken Against Her Was the Product of a Municipal Policy**

Even if plaintiff could show that she was discriminated against – a point defendant does not concede – she cannot establish liability under the Supreme Court's decision in <u>Monell v. Department of Social Services.</u>, 436 U.S. 658, 694 (1978), against the sole defendant, the DOE.

It is settled that, "when the defendant sued for discrimination under § 1981 or §

---

[10] This is also supported by that fact that plaintiff's multiple other guidance applications for positions at other schools have also been denied. <u>See</u> Ex. B (Pl. Dep.) at 94:18 – 95:18.

[11] Notably, plaintiff does not challenge – or even mention in her Complaint – the hiring of Sonia Burke, a bilingual African American guidance counselor, even though Ms. Burke was hired shortly after plaintiff allegedly expressed interest in the position.  <u>See</u> Ex. A (Compl.); Ex. F (Sullivan Decl.) at ¶ 10-12.

1983 is a municipality . . . the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom." Patterson v. County of Oneida, 375 F.3d 206, 226 (2d Cir. 2004); see also Monell, 436 U.S. at 694. Philippeaux v. North Cent. Bronx Hosp., No. 96-7362, 1996 U.S. App. LEXIS 30736, 1996 WL 680758 (2d Cir. Nov. 22, 1996) ("To recover under 42 U.S.C. §§ 1981, 1983 or 1985, a plaintiff must show that there is a "custom or policy" of the alleged discriminatory conduct."). This is because, under these statutes, "a municipality cannot be held liable solely because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell, 436 U.S. at 691.

In this context, "'[a] school district's liability . . . may be premised on any of three theories: (1) that a district employee was acting pursuant to an expressly adopted official policy; (2) that a district employee was acting pursuant to a longstanding practice or custom; or (3) that a district employee was acting as a 'final policymaker.'" Hurdle v. Bd. of Educ., 113 F. App'x 423, 424-425 (2d Cir. 2004) (citation omitted), cert. denied 544 U.S. 921 (2005). Plaintiff bears the burden to show that such a policy exists and was the cause of the alleged deprivation of a constitutional right. See Davis v. City of New York, 75 F. App'x 827, 830 (2d Cir. 2003) (discussing the "high burden of establishing municipal liability"); Jeffes v. Barnes, 208 F.3d 49, 57-58 (2d Cir. 2000).

Here, plaintiff makes no allegation that her failure to receive a guidance counselor position was the result of a formally ratified policy of the DOE, and instead appears to proceed on the theory that Principal Rubio acted as a policymaker.[12] See generally Ex. A (Compl.); Ex.

---

[12] To the extent that plaintiff, nonetheless, alternatively argues that the actions at issue amounted to a longstanding custom, this argument is entirely unpersuasive. See Davis, 75 F. App'x at 829 (noting that the custom must be "'so manifest as to imply the constructive acquiescence of senior

B (Pl. Dep.). However, while Principal Rubio may have had some discretion in the hiring of guidance counselors and others, that discretion remained subject to DOE employment policy and his actions in making those decisions cannot be said to amount to DOE employment or hiring policy.[13] See Ex. G (DOE Chancellor's Reg. A-830).

The question of whether an individual is a policymaker is a matter of state law and is "a legal question to be resolved by the trial judge before the case is submitted to the jury." Hurdle, 113 F. App'x at 425 (internal quotation omitted). Further, the inquiry as to whether an individual's actions serve to create de facto municipal policy does not end with a determination as to whether the official in question was a policymaker. "The fact that a particular official -- even a policymaking official -- has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." Pembaur v. City of Cincinnati, 475 U.S. 469, 481-82 (1986) (plurality opinion)[14] (citations omitted). To illustrate this point, the Supreme Court provided an example about an area that is particularly prone to confusion without an

policy-making officials'") (citation omitted). Not only has plaintiff repeatedly testified that she was not discriminated against either before or after Principal Rubio, but plaintiff has produced absolutely no evidence to suggest that an official with DOE policymaking power on employment decisions had any reason to know of plaintiff's allegations. See Ex. B (Pl. Dep.) at 64:8 – 66:3, 196:13 – 197:16, 230:12 – 231:6.

[13] It need only be added that the hiring information in Subsection B, supra, eviscerates any contention that Principal Rubio – let alone the DOE – had a custom of discriminating against African Americans when it came to filling guidance counselor positions.

[14] Notably, the portion of the Court's opinion that this quote comes from was a plurality because Justice O'Connor, who filed an opinion concurring in part and concurring in the judgment, "fear[ed] that the standard the majority articulates may be misread to expose municipalities to liability beyond that envisioned by the Court in Monell." Pembaur, 475 U.S. at 491 (O'Connor, J., concurring).

understanding of this distinction, municipal employment policy, stating:

> [I]f county employment policy was set by the Board of County Commissioners, only that body's decisions would provide a basis for county liability. This would be true even if the Board left the Sheriff discretion to hire and fire employees and the Sheriff exercised that discretion in an unconstitutional manner; the decision to act unlawfully would not be a decision of the Board.

Id. at 483 n. 12 (plurality opinion).

The Supreme Court later applied this example St. Louis v. Praprotnik, 485 U.S. 112 (1988). In that case, both the plurality and the concurrence reiterated the distinction between an act of a policy maker on a subject over which that individual has policy-making authority and the act of a municipal employee or official in regard to a subject for which the individual did not have policy-making authority; finding that "appointing authorities" who had hired individuals without any substantive review by their superiors were not setting policy on employment decisions simply because of the discretion and deference given to them in making employment decisions. Id. at 129-30, 139-42. In doing so, the Court rejected the Eighth Circuit Court of Appeals' conclusion that a municipal officer acted as a policymaker for employment purposes simply because their employment decisions were not subject to a de novo review by a higher ranking official. Id. at 129.

Consistent with this guidance provided by the Supreme Court, the Second Circuit, in Hurdle, found that a superintendent is not a policymaker for employment decisions regarding principals, as even a school superintendent's powers are circumscribed and subject to review. See Hurdle, 113 F. App'x at 426-27. In doing so, the Court reiterated the distinction between municipal liability for a policymaker's actions on a subject matter for which he or she has the authority to set municipal policy and simple liability for the discretionary actions of a municipal

officer, being exactly the type of <u>respondeat</u> <u>superior</u> liability that <u>Monell</u> found inactionable under § 1983, stating:

> "'Responsibility for making law or setting policy' ... is authority to adopt rules for the conduct of government. Authority to make a final decision need not imply authority to establish rules." … "Any city acts exclusively through agents . . . . If it were enough to point to the agent whose act was the final one in a particular case, we would have vicarious liability. . . . That a particular agent is the apex of a bureaucracy makes the decision 'final' but does not forge a link between 'finality' and 'policy.'" … Even if [the superintendent] was the <u>decisionmaker</u> with regard to [the principal]'s transfer, that does not establish that she had the authority to set the policy authorizing involuntary employee transfers.

<u>Hurdle</u>, 113 F. App'x at 427 (citations omitted) (emphasis in original).

Consistent with this precedent, District Courts in the Second Circuit have repeatedly found that a school principal is not a policymaker when it comes to municipal employment policy. <u>See</u> <u>Fierro v. New York City Dep't of Educ.</u>, 994 F. Supp. 2d 581, 588-89 (S.D.N.Y. 2014) (DOE principal is not final policy-maker with respect to teacher termination because his decision may be appealed); <u>Dressler v. New York City Dep't of Educ.</u>, 10 Civ. 3769 (JPO), 2012 U.S. Dist. LEXIS 44249, at *47-54, 2012 WL 1038600 (S.D.N.Y. Mar. 28, 2012) (school principal not a policymaker with respect to teacher evaluations where Chancellor sets policy on how to conduct evaluations and decision is subject to review); <u>Moore v. City of New York</u>, No. 08 Civ. 8879, 2010 U.S. Dist. LEXIS 19183, at * 18, 2010 WL 742981 (S.D.N.Y. Mar. 1, 2010) (neither principal nor superintendent are final policy-makers for DOE for purpose of discrimination and retaliation claims); <u>Shapiro v. N.Y. City Dep't of Educ.</u>, 561 F. Supp. 2d 413, 420 (S.D.N.Y. 2008) ("New York City school principals do not have final policy making authority over employment decision concerning teachers in their schools"); <u>see also</u> <u>McDonald</u>

v. Bd. of Educ., 01 Civ. 1991 (NRB), 2003 U.S. Dist. LEXIS 13338, at * 14-15, 2003 WL 21782685 (S.D.N.Y. Jul. 31, 2003) ("'The power to make hiring decisions … does not in itself give rise to potential Section 1983 liability.' Where, as here, that authority is circumscribed by the Chancellor and the Board's authority to overrule the superintendent, the superintendent cannot be said to be the final policymaker") (citations omitted). But see Giscombe v. N.Y. City Dep't of Educ., 12 Civ. 464 (AT), 2014 U.S. Dist. LEXIS 114610, 2014 WL 3974582 (S.D.N.Y. Aug. 12, 2014) (holding that a principal may be policymaker).[15]

Here, New York Education Law explicitly gives policymaking authority over New York City public schools to the Chancellor of the DOE. See N.Y. Educ. Law §§ 2590-g, 2590-h. As this policymaking authority regards employment practices, particularly the consideration of race in hiring decisions, the Chancellor has exercised this authority herself and set forth the DOE's policy in Chancellor's regulation A-830. See Ex. G (DOE Chancellor's Reg. A-830). This regulation requires DOE personnel to make hiring and other employment decisions without regard to factors such as race. See id. To ensure compliance with this policy by those exercising hiring discretion within the DOE, the DOE created the **Office of Equal Opportunity and Diversity Management ("OEO")** to enforce this policy, and established an internal review process whereby current employees, applicants for employment, parents, students, and others who do business with the DOE can bring claims for violation of this policy. See id.

Under New York State Education Law, school principals are expressly subject to

---

[15] There are some district court decisions that have made the inconsistent determination that a principal is a policymaker for some purposes. However, not only are those decisions not binding, but to the extent those cases concern municipal employment policy, the Second Circuit and U.S. Supreme Court precedent discussed above render those decisions entirely unpersuasive. At least one district court within this circuit has noted the failings in this line of cases, particularly under circumstances where the principal's authority is constrained by the express policies of the Chancellor. See Dressler, 2012 U.S. Dist. LEXIS 44249, at *51-54.

these regulations of the Chancellor in exercising their authority.  See N.Y. Educ. Law § 2590-i

("Subject to the regulations of the chancellor . . ., the principal shall be responsible for the day to

day operation of the school").  As such, while Principal Rubio may have been delegated some

discretion in hiring for particular positions in his school, he was nonetheless bound by DOE

policy in exercising his discretion.  Accordingly, Principal Rubio cannot be said to have been

acting as a policymaker in respect to DOE hiring policy, particularly in respect the use of race in

employment decisions.  See Praprotnik, 485 U.S. at 127 ("When an official's discretionary

decisions are constrained by policies not of that official's making, those policies, rather than the

subordinate's departures from them, are the act of the municipality") (plurality opinion).

Plaintiff's argument that Principal Rubio nevertheless allegedly refused to hire

plaintiff because of her race, is therefore, in itself, an allegation that Principal Rubio violated the

express policy of the DOE.  Plaintiff acknowledged as much by filing an internal complaint with

the OEO.[16]  See Ex. T (OEO Compl.).  Ultimately, plaintiff's claim that her treatment was the

product of DOE policy is undercut not only by New York State Law and express DOE policy,

but also by plaintiff's own testimony that: (1) neither the principal before nor after Principal

Rubio subjected her to discriminatory treatment; and (2) she is not claiming that any of the other

guidance counselor positions she was denied, either at A.P. Randolph or at other DOE schools,

were discriminatorily denied to her.  See N.Y. Educ. Law §§ 2590-g – 2590-i; Ex. G (DOE

Chancellor's Reg. A-830); Ex. B (Pl. Dep.) at 64:8 – 66:3, 94:18 – 95:18, 196:13 – 197:16,

230:12 – 231:6.

Accordingly, it becomes clear that what plaintiff improperly seeks is to hold the

DOE liable for the allegedly unconstitutional employment decisions of a single principal, several

---

[16] That complaint was investigated by two separate DOE entities before being found to be
without merit.  See Ex. B (Pl. Dep.) at 137:8-11.

levels removed from the officials who set the employment policy by which that principal was bound. This is precisely the type of vicarious liability that <u>Monell</u> decided was inappropriate under §§ 1981 and 1983. <u>See</u> <u>Praprotnik</u>, 485 U.S. at 126 ("If the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from respondeat superior liability"). As such, plaintiff, at the very least, cannot meet her burden to prove municipal liability and her claims must be dismissed as such.

**POINT IV**

**PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM FAILS AND PLAINTIFF CANNOT ESTABLISH <u>MONELL</u> LIABILITY.**

**A.      Plaintiff's Hostile Work Environment Claim Fails as a Matter of Law**

"To state a claim for a hostile work environment . . . a plaintiff must show that the complained-of conduct: (1) is objectively severe or pervasive; (2) creates an environment that the plaintiff herself subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff 's race." <u>Goins v. Bridgeport Hosp.</u>, 555 F. App'x 70, 71-72 (2d Cir. 2014). This "severe or pervasive" standard governs hostile work environment claims under both Title VII of the Civil Rights Act and Sections 1981 and 1983. <u>McKinney v. DOT</u>, 487 F. App'x 605, 606 (2d Cir. 2012).

"For racist comments, slurs, and jokes to constitute a hostile work environment, there [generally] must be more than a few isolated incidents of racial enmity.'" <u>Fleming v. MaxMara USA, Inc.,</u> 371 F. App'x 115, 118 (2d Cir. 2010) (internal quotations omitted). In fact, "[t]he plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." <u>Alfano v. Costello</u>, 294 F.3d 365, 373 (2d Cir. 2002). Moreover,

"incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" Id. (quoting Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997)). Indeed, in determining whether a hostile work environment exists, the Supreme Court has cautioned that the law is not intended to serve as "general civility code." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998).

It is also "axiomatic" that a plaintiff alleging a hostile work environment "must demonstrate that the conduct occurred because of" a protected characteristic. Alfano, 294 F.3d at 374; see Oncale, 523 U.S. at 79-80 ("Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discrimination…because of…sex'" or other protected categories) (emphasis in original). As the Second Circuit has noted:

> Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination. Otherwise, the federal courts will become a court of personnel appeals.

Alfano, 294 F.3d at 377.

Here, plaintiff's allegations concerning an alleged hostile work environment at A.P. Randolph can be broken down into two categories: (1) a generalized allegation about the environment at A.P. Randolph under Principal Rubio, or what plaintiff refers to as a "cultural segregation" between Hispanic and African American staff; and (2) specific allegations about comments or actions allegedly made by assistant principals, particularly Assistant Principal Garcia.[17]

---

[17] To the extent plaintiff would allege that her disparate treatment claims support her hostile work environment claims, defendant DOE notes that the Second Circuit has specifically held that these two theories of discrimination are sufficiently distinct such that each must separately be

Plaintiff's allegation of a "cultural segregation" seem to focus on a purported closeness among Hispanic staff who allegedly shared meals together and spent time in each other's offices, while allegedly failing to be inclusive of African-American staff. See Ex. A (Compl.) ¶ 11; Ex. B (Pl. Dep.) at 203:8 – 205:17, 254:13 – 256:2. Not only does this alleged environment appear to have been the product of plaintiff's own actions as much as anyone else's,[18] but any attempt to enforce liability for this generalized complaint about apparent cliques among employees would certainly overstep the Court's admonition that a hostile work environment claim should not be read to impose a "general civility code." See Oncale, 523 U.S. at 81 (1998). Accordingly, plaintiff's hostile work environment claim must be properly focused on plaintiff's specific allegations of purportedly hostile treatment.

Plaintiff's specific allegations of comments or actions that she believes created a hostile work environment center almost entirely on Assistant Principal Garcia.[19] The allegations concern: (1) Assistant Principal Garcia's alleged loud playing of his radio and asking plaintiff if

---

reported to an administrative agency before a Title VII claim can be litigated in court. See Farren v. Shaw Envtl., Inc., 510 F. App'x 44, 46 (2d Cir. 2013). Even if this Court were to consider plaintiff's disparate treatment claims in support of her hostile environment claims, the former claims are not only largely time barred, they also did not occur under circumstances giving rise to any inference of discriminatory intent. See Point II and III.B, supra. As such, they do not support a finding of hostile work environment. See Alfano, 294 F.3d at 374. Further, these alleged actions, which concerned plaintiff's work opportunities rather than any disparaging treatment, cannot be said to support a finding that plaintiff's work environment was "permeated with discriminatory intimidation, ridicule, and insult." Id. at 373; see Ex. A (Compl.) ¶¶ 12-22, 37-47; Ex. B (Pl. Dep.) at 95:19 – 96:13, 97:9 – 101:8, 103:7 – 108:10, 191:3 – 192:9, 203:8 – 205:17, 209:2-21, 221:17 – 222:8.

[18] Plaintiff admits that she never invited any Hispanic employee at the school to share a meal with her, and plaintiff acknowledges that although she was invited by at least one Hispanic staff member to join in some of the meals that she complains of, plaintiff nonetheless simply decided she was not welcome. See Ex. B (Pl. Dep.) at 203:8 – 205:17, 255:5 – 256:2.

[19] Notably, Assistant Principal Garcia testified that he identifies himself as both Dominican American and "black." See Ex. D (Garcia Dep.) at 34:4-25

she was bothered by his classical music; (2) his alleged reference to a purported stereotype about lactose intolerance; (3) his alleged offer to purchase grits for plaintiff while sharing breakfast with another employee; (4) his alleged dressing up in an afro wig for a student dress-up day and making a comment along the lines of "more power to the people"; (5) his alleged putting up of a poster of Malcolm X and stating "fight the power"; (6) his alleged questions about "black girls" who are about to fight; (7) his alleged use of the word "germans" to refer to African American employees; (8) Assistant Principal Calcano and Assistant Principal Garcia's allegedly inadequate response to a student's use of a racial epithet; and (9) Assistant Principal Menegatos's alleged teasing of plaintiff about getting a guidance counselor position.[20]  See Ex. A (Compl.) ¶¶ 24-27, 31-32; Ex. B (Pl. Dep.) at 72:14 – 75:23, 114:18 – 115:15, 120:8 – 122:22, 131:4-17, 142:12 – 145:6, 153:7 – 155:20, 159:17 – 163:18; 165:18 – 166:7, 173:19-22, 187:7 – 188:7, 241:17 – 244:24.

As an initial matter, many of these allegations lack any apparent racial animus and plaintiff's conclusory attempts to attribute racial animus to them is entirely insufficient.  See D'Amico, 132 F.3d at 149 ; Kulak, 88 F.3d at 71 ("conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment"); Johnson, 2014 U.S. Dist. LEXIS 119158, at *17 ("Statements that are devoid of specifics and evidence that is "merely colorable" are insufficient to defeat a properly supported motion for summary judgment").  Further, the last two of these allegations, in addition to lacking any facially racial connotation, are severely undercut by Assistant Principal Menegatos's documented support of

---

[20] Notably, less than half of these allegations appeared in plaintiff's Complaint; plaintiff's story about when and how often Assistant Principal Garcia asked her about "black girls" fighting changed after she served her sworn interrogatory responses, and plaintiff's allegation about Assistant Principal Garcia's use of the word "germans" rests solely on hearsay.  See Ex. A (Compl.); Ex. B (Pl. Dep.) at 160:1 – 163:18, 187:7 – 188:7; Ex. W (Pl. Disc. Resp.) at 4-6.

plaintiff's guidance counselor ambitions and plaintiff's admission that the student in question was actually suspended for five days. <u>See</u> Ex. L (Sept. 2008 Supervisor Form); Ex. G (Menegatos Recommend.); Ex. B (Pl. Dep.) at 244:1-7.

Ultimately, plaintiff's hostile work environment claim must focus on a few individual incidents of what can, at most, be described as ill-advised remarks, spread out over the course of the approximately five and a half year period that Assistant Principal Garcia worked at A.P. Randolph. <u>See</u> Ex. D (Garcia Dep.), at 11:5 – 14:4. Even when considered together with plaintiff's other allegations, these allegations do not rise to the level of severe or pervasive to establish a hostile work environment, and instead are complaints about nothing more than workplace dynamics and personality conflicts. <u>See</u> <u>Alfano</u>, 294 F.3d at 374, 379 (stating that "incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive,'" granting judgment for defendant where plaintiff listed 12 incidents in support of her hostile work environment claim, and listing a number of cases where more severe or pervasive conduct was found insufficient) (citation omitted); <u>Brown v. Coach Stores</u>, 163 F.3d 706, 713 (2d Cir. 1998) (finding occasional racist remarks made by a supervisor insufficient to state a hostile work environment claim); <u>Davis-Molinia v. Port Auth. of N.Y. & N.J.</u>, 08 CV 7584 (GBD), 2011 U.S. Dist. LEXIS 93868, at *44, 2011 WL 4000997 (S.D.N.Y. Aug. 19, 2011) (granting defendant summary judgment despite one plaintiff making over 16 allegations – which included claims about "nasty" treatment and that other employees were "cliquish" and had meals together without plaintiff – and noting that "[t]he gravamen of their claims is rooted in conduct that amounts to nothing more than workplace dynamics — that is, personal enmity or personality conflicts"), <u>aff'd</u>, 488 F. App'x 530 (2d Cir. 2012); <u>Nugent v. St. Luke's/Roosevelt Hosp. Ctr.</u>, 05 Civ. 5109 (JCF), 2007 U.S. Dist. LEXIS 28274, at *58, 2007

WL 1149979 (S.D.N.Y. Apr. 18, 2007) ("as a matter of law, a supervisor's occasional use of sexist language does not create a hostile work environment") (collecting cases), aff'd 303 F. App'x 943 (2d Cir. 2008).

Accordingly, the record negates plaintiff's claim of a hostile work environment.

**B. Plaintiff Fails to Meet Her Burden to Establish That the Alleged Hostile Work Environment Was the Product of a Municipal Policy, Particularly as the Allegations Focus on the Alleged Statements and Actions of Assistant Principals**

As discussed in Point II.A.3, supra, it is plaintiff's burden to prove, as a matter of law, that the actions alleged were the product of a municipal policy. See Hurdle, 113 F. App'x at 427; Jeffes, 208 F.3d at 57-58.

In addition to establishing the DOE's hiring policy, the Chancellor has also set forth the DOE's policy on equal opportunity in the workplace in DOE Chancellor's Regulation A-830. See Ex. G (DOE Chancellor's Reg. A-830). This policy once again empowers the OEO to hear employee complaints about a hostile work environment, to undertake an internal review process in response to complaints in order to ensure compliance with the policy, and subjects employees found to be in violation of the policy to disciplinary action. See id.

In regard to her hostile work environment claims, plaintiff once again cannot point to any evidence in the record supporting her contention that these alleged statements and actions took place pursuant to any explicit or implicit DOE policy. In fact, plaintiff herself acknowledges that this alleged environment did not exist prior to Principal Rubio and further admits that Principal Fanning – whom plaintiff repeatedly testified did not discriminate against her – has not supported this environment.[21]  See Ex. B (Pl. Dep.) at 64:8 – 66:3, 196:13 – 197:16, 230:12 – 231:6.  Further, while plaintiff attempts to attribute this environment to

_____

[21] Notably, a majority of plaintiff's factual allegations in support of her hostile work environment claim occurred after Principal Rubio left A.P. Randolph.  See Ex. C (Fanning Dep.) at 7:11 – 8:9.

Principal Rubio, plaintiff cannot show any evidence to link this alleged environment to Principal Rubio, let alone a DOE official with policy making authority on the subject. Instead, as seen above, plaintiff's factual allegations in support of her hostile work environment claim focus on allegations about actions taken by one assistant principal at A.P. Randolph – an individual whom plaintiff cannot credibly contend is a DOE policymaker. See Point III.A, supra. As such, plaintiff's Monell claim for hostile work environment purposes is woefully deficient. See id.

Accordingly, because plaintiff, at the very least, cannot point to any evidence in the record to meet her burden to prove that the alleged hostile work environment was the product of a municipal policy, plaintiff's hostile work environment claim must also be dismissed.

## **CONCLUSION**

For the foregoing reasons, defendant DOE respectfully requests that the Court issue an order granting its motion for summary judgment in favor of defendant in its entirety and granting such other and further relief as this Court deems just and proper.

Dated:     New York, New York
          February 27, 2015

**ZACHARY W. CARTER**
Corporation Counsel of the
  City of New York
Attorney for Defendant
100 Church Street, Room 2-317
New York, New York 10007
(212) 356-2452
srenagha@law.nyc.gov

By:     _____/s/_____
          Sean R. Renaghan
          Assistant Corporation Counsel

Donald C. Sullivan,
Sean R. Renaghan,
  Of Counsel.